(No. 42794.—

*In re* CONTESTED ELECTION AS TO THE APPROVAL OF THE NATURAL RESOURCES DEVELOPMENT BOND ACT— (JOHN G. WOODS *et al.,* Appellants.)

*Opinion filed Oct. 7, 1970.—Rehearing denied Dec. 3, 1970.*

LOUIS ANCEL and STEWART H. DIAMOND, of ANCEL, STONESIFER & GLINK, of Chicago, for Appellants.

WILLIAM J. SCOTT, Attorney General of Springfield, (FRANCIS T. CROWE, Assistant Attorney General, and DONALD J. VEVERKA, Special Assistant Attorney General, of counsel,) for Appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On November 5, 1968, a referendum entitled "Natural Resources Development Bond Act" was submitted to the Illinois voters. The State Electoral Board certified that there were 1,656,600 "yes" votes and 1,216,814 "no" votes and found that the bond issue had not been approved since the "yes" votes did not constitute a majority of the 4,267,-956 votes cast for the members of the General Assembly. Section 18 of article IV of the Illinois constitution provides in part: "* * * the State may, to meet casual deficits or failures in revenues, contract debts, never to exceed in the aggregate $250,000; and moneys thus borrowed . shall be applied to the purpose for which they were obtained, or to

pay the debt thus created, and to no other purpose; and no other debt, except for the purpose of repelling invasion, suppressing insurrection, or defending the state in war, (for payment for which the faith of the state shall be pledged,) shall be contracted, unless the law authorizing the same shall, at a general election, have been submitted to the people, and have received a majority of the votes cast for members of the general assembly at such election."

A suit was filed in the circuit court of Cook County to contest the election on the ground that the aforementioned standard required by the Illinois constitution is repugnant to the Federal constitution and is therefore invalid. The Attorney General filed a motion to strike and dismiss which was granted. The contestants appealed directly to this court on constitutional issues.

The appellants contend that section 18 of article IV of the Illinois constitution is repugant to the equal-protection clause of the United States constitution because it violates the concept of "one man—one vote". Appellants suggest that decisions of the United States Supreme Court interpreting the equal-protection clause require a reversal of the decision of the lower court and that certain State courts deciding this exact issue lend support to this conclusion. We therefore analyze decisions of the United States Supreme Court and of sister States which have dealt with the issue.

Since the landmark case of *Baker* v. *Carr* (1962), 369 U.S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691, the concept of "one man-one vote" has been implemented in cases involving malapportionment in the election of both State and Federal officials. See: *Wesberry* v. *Sanders* (1964), 376 U.S. 1, 11 L. Ed. 2d 481, 84 S. Ct. 526; *Reynolds* v. *Sims* (1964), 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362; *WMCA, Inc.* v. *Lomenzo* (1964), 377 U.S. 633, 12 L. Ed. 2d 568, 84 S. Ct. 1418; *Maryland Committee for Fair Representation* v. *Tawes* (1964), 377 U.S. 656, 12 L. Ed. 2d 595, 84 S. Ct. 1442; *Davis* v. *Mann* (1964), 377 U.S. 678,

12 L. Ed. 2d 609, 84 S. Ct. 1453; *Roman* v. *Stencock* (1964), 377 U.S. 695, 12 L. Ed. 2d 620, 84 S. Ct. 1462; *Lucas* v. *Colorado General Assembly* (1964), 377 U.S. 713, 12 L. Ed. 2d 632, 84 S. Ct. 1472. In the recent case of *Hadley* v. *Junior College District* (1970), 397 U.S. 50, 25 L. Ed. 2d 45, 90 S. Ct. 791; the court reviewed the history of the "one man-one vote" concept:—"In *Wesberry* v. *Sanders,* 376 U.S. 1, 11 L. Ed. 2d 481, 84 S. Ct. 526 (1964), we held that the Constitution requires that 'as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's.' *Id.,* at 7-8, 11 L. Ed. 2d at 486, 487. Because of this requirement we struck down a Georgia statute which had glaring discrepancies among the populations in that state's congressional districts. In *Reynolds* v. *Sims,* 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964), and the companion cases, we considered state laws which had apportioned state legislatures in a way that again showed glaring discrepancies in the number of people who lived in different legislative districts. In an elaborate opinion we there called attention to prior cases indicating that a qualified voter has a constitutional right to vote in elections without having his vote wrongfully denied, debased or diluted. *Ex parte Siebold,* 100 U.S. 371, 25 L. Ed. 717 (1880); *Ex parte Yarbrough,* 110 U.S. 651, 28 L. Ed. 274, 4 S. Ct. 152 (1884); *United States* v. *Mosley,* 238 U.S. 383, 59 L. Ed. 1355, 35 S. Ct. 904 (1915); *Guinn* v. *United States,* 238 U.S. 347, 59 L. Ed. 1340, 35 S. Ct. 926 (1915); *Lane* v. *Wilson,* 307 U.S. 268, 83 L. Ed. 1281, 59 S. Ct. 872 (1939); *United States* v. *Classic,* 313 U.S. 299, 85 L. Ed. 1368, 61 S. Ct. 1031 (1941). Applying the basic principle of *Wesberry,* we therefore held that the various state apportionment schemes denied some voters the right guaranteed by the Fourteenth Amendment to have their votes given the same weight as that of other voters. Finally in *Avery* v. *Midland County,* 390 U.S. 474, 20 L. Ed. 2d 45, 88 S. Ct. 1114 (1968), we

applied this same principle to the election of Texas county commissioners, holding that a qualified voter in a local election also has a constitutional right to have his vote counted with substantially the same weight as that of any other voter in a case where the elected officials exercised 'general governmental powers over the entire geographic area served by the body.' *Id.*, at 485, 20 L. Ed. 2d at 53." 397 U.S. at ——, 25 L. Ed. 2d at 48-49. The court then concluded that "as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis which will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials." 397 U.S. at ——, 25 L. Ed. 2d at 50-51.

In addition to malapportionment, the court has also found voter dilution in situations where, because of reference to an external standard, one vote is weighted more heavily than another. Appellants cite *Gray* v. *Sanders* (1963), 372 U.S. 368, 9 L. Ed. 2d 821, 83 S. Ct. 801, wherein the court found that in a statewide primary election the Georgia County Unit System which weighted the votes of smaller counties more heavily than larger ones, violated the equal-protection clause of the fourteenth amendment. "The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions." 372 U.S. at 380.

In 1969, the court decided *Kramer* v. *Union Free School District*, 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886, and *Cipriano* v. *City of Houma*, 395 U.S. 701, 23 L. Ed. 2d 647, 89 S. Ct. 1897; and in 1970, *City of Phoenix* v. *Kolodziejski*, 399 U.S. 204, 26 L. Ed. 2d 523, 90 S. Ct. 1990, all

dealing with the exclusion of certain persons or groups of persons from an exercise of voting rights. In *Kramer,* a New York statute restricting voting in a local school board election to those who either owned real property or had children who were attending school in the district was held unconstitutional. In *Cipriano* and *City of Phoenix,* voting was limited in revenue bond and general obligation bond elections to real-property owners or their spouses. Non-ownership of real property was considered under the circumstances not to be a rational basis for exclusion of franchise.

The aforementioned cases indicate that the equal-protection clause requires that in selecting a representative in government, votes may not be debased and voters may not be "fenced out" because of "invidious" distinctions. In decision-making elections other than selecting a representative in government, voters may not be excluded unless there is a rational basis for the exclusion. The case at bar involves neither the selecting of representatives in government nor "fencing out" of certain individuals from the voting process. Concerning the issue before us, we cannot find in any cases cited an indication that the Supreme Court would impose a strict "one man-one vote" rule on the approval of bonded indebtedness. It is therefore incumbent upon this court to determine whether an extra-majority requirement under these circumstances violates equal protection.

The Supreme Courts of Idaho, California and West Virginia have had an opportunity to decide a similar issue. In *Bogert* v. *Kinzer* (1970), 93 Idaho 515, 465 P.2d 639, the court found that a provision in the Idaho constitution requiring a two-thirds vote for the imposition of local indebtedness was not violative of the fourteenth amendment. In *Lance* v. *Board of Education,* —— W. Va. ——, 170 S.E. 2d 783, the West Virginia Supreme Court held two State constitutional provisions requiring a three-fifths approval for bond indebtedness and a 60% vote for tax-rate

increases were violative of the equal-protection clause of the fourteenth amendment. For the same conclusion, see *Westbrook* v. *Mihaly* (1970), 2 Cal. 3d 765, 471 P.2d 487. An appeal was taken in *Lance* and on April 6, 1970, the United States Supreme Court granted a writ of *certiorari*. (90 S. Ct. 1264.) Both *Lance* and *Westbrook* found that the argument in support of extramajority approval through an analogy to many provisions of the United States constitution was without merit. See: art. I, sec. 3 (conviction in an impeachment proceeding); art. I, sec. 5 (expulsion from Congress); art. I, sec. 7 (overriding of an executive veto ; art. II, sec. 2 (ratification of treaties); and art. V (constitutional amendment process).

At this juncture the Supreme Court of the United States has never extended the concept of "one man-one vote" to decision-making elections but rather has specifically applied said concept to the selection of persons by popular election to perform governmental functions. (*Hadley* v. *Junior College District*.) In view of the present status of the concept of "one man-one vote", this court is not disposed to extend it to decision-making elections, for we agree with the court in *Bogert* that this question is "of substantial significance in determining whether or not this nation is to be considered as completely committed to a majoritarian form of government in all its aspects, with all of the changes in fundamental concepts of federal, state and local government that such a theory implies and requires." (465 P.2d at 646.) Continuing, the court stated: "The [US] Constitution in certain portions thereof, specifically requires the approval of more than a simple majority vote in deciding certain questions. It is, we believe, the height of illogic to suppose that a portion of that same document as tenuous and abstract as the Equal Protection Clause prohibits a state from the utilization of a political tool which it specifically authorizes and requires in other circumstances." (465 P.2d at 649.) We believe that in decision-making elections other

than selecting a representative in government, States may constitutionally require a showing of widespread consent greater than majority where it is considered that an issue is of such importance to require it.

The Illinois constitution was ratified in 1870 by the people by a majority of those voting in the special election. Section 18 of article II of the constitution is a general limitation on the amount of and the purposes for which debt may be incurred by the State. By requiring a certain percentage of affirmative votes, historically the section does favor nonpassage of the bond referendum, and widespread support has been necessary for approval. We believe, however, that because a strict "one man-one vote" rule is not applicable, this system, even though it tends to maintain the *status quo* in certain areas of fiscal policy, is constitutionally permissible.

Appellants further contend that reference to the number of votes cast for the General Assembly to determine whether the referendum was approved violates the equal-protection clause and the guaranty clause of section 4 of article IV of the United States constitution. We do believe that a serious constitutional question would arise if a standard for determining voter approval did not bear a rational relationship to a legitimate State purpose. The debates of the 1870 Constitutional Convention indicate a strong skepticism about unlimited State indebtedness. In adopting section 18 of article IV, the Convention sought to place certain restrictions upon the General Assembly relative to appropriation of State funds. Initially it restricted appropriations to current revenue with the exception of $250,000 for casual deficits, *etc.* It was then provided that additional appropriations could be made only by submitting the proposition to the voters in the manner therein provided. The reference to the General Assembly vote requires an extraordinary support of voters for passage of the referendum. In addition thereto, it is the General Assembly that has the re-

sponsibility to appropriate funds from the bond issue as the need arises. It is reasonable that the Convention determined there should be a tie-in between the vote on the referendum and the election of the members of the General Assembly who would have the duty to appropriate the sums so approved. We believe that limitation of indebtedness is a legitimate State purpose and that the reference to the General Assembly vote bears a rational relationship to this purpose.

The United States Supreme Court has stated that a challenge to State action based on the guaranty clause does not present a justiciable question. In *Baker* v. *Carr* (1962), 369 U.S. 186, 223, 7 L. Ed. 2d 663, 689, 82 S. Ct. 691, the court commented: "* * * the Guaranty Clause is not a repository of judicially manageable standards which a court could utilize independently in order to identify a State's lawful government. The Court has since refused to resort to the Guaranty Clause—which alone had been invoked for the purpose—as the source of a constitutional standard for invalidating state action." Accordingly, we find any argument based on the guaranty clause without merit.

Appellants submit, without argument, that the absence of a vote on the bond issue may not constitutionally be used as a negative vote to dilute the votes of those voting affirmatively on the proposition. However, the absence of a vote is not, in fact, used to determine voter approval or to dilute the affirmative votes. Section 18 of article IV provides for passage in terms of only affirmative votes. Accordingly, only the affirmative votes are counted, and the absence of a vote would not affect this count. Having determined that this standard is constitutionally permissible, we find no merit to this argument.

Finally, appellants contend that the formula required by section 18 of article IV allows the casting of multiple votes by a single voter in violation of the equal-protection clause. They first argue that an individual may cast two negative

votes against the bond issue by casting a vote for a State legislator and casting a negative vote against the bond issue or not voting on the bond issue. Once again we must indicate that only the affirmative votes are significant for passage of the bond issue. Accordingly, a negative vote either through a vote against the issue or the absence of a vote does not tend to directly defeat the issue but merely lessens the possible support for it.

Appellants next argue that the formula violates equality of voting power because a single individual may cast two votes for the proposition by voting for the bond issue and not voting for a State legislator. However, we can perceive of no inequality of voting power as between different individuals. Each individual has the right to cast one vote for a State legislator and for the bond issue. No question of debasement or dilution is present because all voters are in an identical position upon entering the voting booth. If an individual casts his vote in a manner different from another, it is the choice of the individual and not a pre-existing barrier erected by the constitution or the General Assembly.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*