WKBH Television, Inc., Appellant, v. Department of Revenue, Respondent.

*No. 75–170. Argued November 3, 1976.—Decided February 1, 1977.*
(Also reported in 250 N. W. 2d 290.)

For the appellant there was a brief by *Johns, Flaherty & Gillette, S. C.* and oral argument by *Galen W. Pittman,* all of La Crosse.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Allan P. Hubbard,* assistant attorney general, and oral argument by *E. Weston Wood,* assistant attorney general.

ABRAHAMSON, J.   The facts were stipulated before the Tax Appeals Commission and are not in dispute. In June, 1969, WKBH adopted a plan of complete liquidation. In January, 1970, it sold its real and tangible personal property and certain intangible personal property pursuant to its plan of complete liquidation; it then liquidated and distributed all of its assets within one year of the adoption of the plan on a pro rata basis to its shareholders, except for certain assets retained to meet claims.

At all times pertinent to this case, 53.5 percent of WKBH's outstanding shares of stock were owned by residents of the State of Wisconsin and 46.5 percent thereof were owned by nonresidents of the state.   Thus in the distribution of assets pursuant to the plan, 53.5 percent thereof were received by the Wisconsin resident shareholders, and the balance was received by the nonresident shareholders.

On or about June 18, 1970, WKBH filed a Wisconsin franchise and income tax return for the fiscal year beginning May 1, 1969, and ending April 30, 1970. It reported as taxable Wisconsin income 46.5 percent of the gain it computed on the sale of the assets, to the extent such gain had been distributed to its shareholders by the end of such fiscal year, and paid the tax due as shown by the return. The statutory provision requiring this result is as follows:

"71.337 Gain or loss on sales or exchanges in connection with certain liquidations.

"(1) GENERAL RULE. If a corporation adopts a plan of complete liquidation, and within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then gain or loss shall not be recognized to such corporation from the sale or exchange by it of property within such 12-month period *to the extent that such gain or loss*

*is participated in by Wisconsin resident shareholders."* (Emphasis supplied.)

On or about June 24, 1970, petitioner filed an amended return for the same fiscal year in which it claimed a refund of $119,326.40, being the amount of tax paid on the 46.5 percent gain on sale of assets which had been distributed to shareholders.

WKBH then filed a claim for refund of taxes which was denied by the Wisconsin Department of Revenue. It then sought review of the Department's decision by the Wisconsin Tax Appeals Commission which affirmed the Department. Review of the Commission's order by the circuit court resulted in the court's affirmance of the decision and order of the Commission.

The facts in this case are not distinguishable from those presented in *Simanco, Inc. v. Department of Revenue,* 57 Wis.2d 47, 203 N.W.2d 648 (1973), appeal from Sup. Ct. Wis. dismissed for want of substantial question, 414 U. S. 804 (1973).[1] In *Simanco* this court

---

[1] The state contends this case was decided on its merits by the United States Supreme Court by its dismissal of *Simanco.* Stern and Grossman, *Supreme Court Practice* 197 (4th ed. 1969). The effect of a dismissal for want of a substantial question by the United States Supreme Court raises an interesting question which we need not answer because we shall not rest our decision on this point.

In *Hicks v. Miranda,* 422 U.S. 332, 344, 45 L. Ed.2d 223, 95 Sup. Ct. 2281 (1970), Mr. Justice WHITE stated with respect to another summary dismissal of an appeal as follows:

"A federal constitutional issue was properly presented . . . and we had no discretion to refuse adjudication of the case on its merits as would have been true had the case been brought here under our certiorari jurisdiction. We are not obligated to grant the case plenary consideration, and we did not; but we were required to deal with its merits. We did so by concluding that the appeal should be dismissed because the constitutional challenge to the California statute was not a substantial one. The three-judge court was not free to disregard this pronouncement.

On the other hand, Mr. Justice CLARK, while sitting on the 4th Circuit, reacted to this assertion by saying that the court's statements:

upheld the statute against an equal-protection challenge. The court analyzed the operation of the statute, recog-

". . . seem to fly in the face of the long-established practice of the court at least during the 18 terms in which I sat. During that time, appeals from state court decisions received treatment similar to that accorded petitions for certiorari, and were given about the same precedential weight. An unquestioning application of the Hicks rule can lead to nothing but mischief and place an unnecessary restraining hand on the progress of federal constitutional adjudication." *Hogge v. Johnson*, 526 F.2d 833, 836 (4th Cir. 1975).

Mr. Justice BRENNAN, in dissenting from a certiorari denial, expressed his misgivings about the *Hicks* rule in *Colorado Springs Amusements Ltd. v. Rizzo*, 44 L.W. 3758 (July 6, 1976). He commented in part as follows:

"Further ambiguity is created by the Court's practice of summarily affirming only in federal cases and dismissing for want of a substantial federal question only in state cases—a practice that, I confess, I have accepted uncritically for nearly 20 years. When we summarily affirm in an appeal from a three-judge District Court, we necessarily hold that a three-judge court was required; otherwise, we would be without jurisdiction under 28 U.S.C. sec. 1253. This affirmance, then, encompasses a holding that there was a 'substantial federal question' requiring convening of a three-judge court under 28 U.S.C. sec. 2281. Yet, we would 'dismiss for want of a substantial federal question' an appeal from a state supreme court raising the identical issue. The language used to dispose of appeals in state cases is clearly misleading; the Court may be saying either that the federal question is insufficiently substantial to support jurisdiction or that a substantial federal question was correctly decided and that this conclusion will not be affected by full briefing and oral argument. Even these alternatives are not mutually exclusive, however, since the six or more Members of the Court voting to dismiss might not agree in a particular case; at least where a majority of the Court votes to dismiss on the latter ground, we ought not create still more confusion by dismissing for want of a substantial federal question. . . .

"Even if the Court rejects my view that Hicks should be modified, at a minimum we have the duty to provide some explanation of the issues presented in the case and the reasons and authorities supporting our summary dispositions. This surely should be the practice in cases presenting novel issues or where there is a disagreement among us as to the grounds of the disposition, and I think it should be the practice in every case. In addition, we

nized that in areas of economic and fiscal regulation the state legislature had broad power to make classifications in pursuit of reasonable state policies, and found that the questioned statute did not violate the equal-protection clause of the United States Constitution.

". . . The statute is attacked on the ground that it classified a corporation for taxation solely on the basis of its proportion of nonresident shareholders. It should be noted initially that it is unquestioned in these proceedings that the gain on the liquidation of the corporation is within the jurisdiction of the state's taxing authority without consideration of the residence of its shareholders and could be taxed in full. The basic power to tax the corporation under the circumstances present here is admitted. It should also be noted that sec. 71.337 (1), Stats., does not accord different treatment to foreign and domestic corporations. If either is within the state's taxing jurisdiction it is treated alike. Moreover, the impact of the tax levied in a particular case, where there is a gain on liquidation, falls equally on the resident and nonresident shareholders of that corporation; and following the imposition of the tax, all shareholders, residents and nonresidents alike, are treated the same.

". . .

"The classification which results in the determination that the gain subject to tax is proportional to the nonresident shareholders is a reasonable implementation of a legislative policy based upon a proper public purpose. Nonresident shareholders ordinarily would escape any personal income taxation by the state of Wisconsin. Wisconsin taxpayers are personally taxed on any gain that might be realized. The unamended 1955 version of the statute had the effect of permitting the entire gain by the corporation to be irretrievably lost for taxation purposes by the state, except to the extent that a gain was realized by resident Wisconsin shareholders. To the extent that a liquidating corporation had nonresident

ought to distinguish in our dispositions of appeals from state courts between those grounded on the insubstantiality of the federal questions presented and those grounded on agreement with the state court's decision of substantial federal questions." (44 L.W. 3760)

shareholders, the gains to the corporation upon a liquidating sale would go totally untaxed. If the shareholders were totally nonresidents, the exemption from the tax would be complete. The classification adopted by the statute is related directly to the incidence of personal taxation upon the shareholders. The classification is based upon a real and not an arbitrary or capricious difference.

"In any particular liquidation, even under the revised statute, it is apparent that, insofar as Wisconsin is concerned, the impact of the tax falls heavily upon a Wisconsin resident, for he is obliged not only to have his distributive share reduced by the tax on the corporation's gain apportioned to out-of-state residents, but, in addition, he is taxed on his personal distribution. The out-of-state resident may, however, be taxed by the jurisdiction of his residence. Nevertheless, the impact of the present statute falls heaviest on the local resident." *Simanco,* pp. 57–58.

We have reviewed the majority decision in *Simanco* and find its reasoning as persuasive now as then. The United States Supreme Court in *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 365, 93 S. Ct. 1001, 35 L. Ed.2d 351 (1973), which was decided after *Simanco,* upheld, as comporting with equal protection requirements, an Illinois constitutional provision subjecting corporations, but not individuals, to ad valorem taxes on personalty. The United States Supreme Court, using language very similar to that used by Mr. Justice HEFFERNAN in *Simanco,* stated:

"The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. *Harper v. Virginia Board of Elections,* 383 U. S. 663, 666. Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation. . . .

"We could strike down this tax as discriminatory only if we substituted our judgment on facts of which we can be only dimly aware for a legislative judgment that reflects a vivid reaction to pressing fiscal problems. *Quaker City Cab Co. v. Pennsylvania* [277 U. S. 389] is only a relic of a bygone era. We cannot follow it and stay within the narrow confines of judicial review, which is an important part of our constitutional tradition."

In this case additional grounds of unconstitutionality are raised by WKBH:

1. The statute constitutes a regulation of commerce among several states in violation of Section 8 of Article II of the Constitution of the United States.[2]

2. The statute denies WKBH and its shareholders the privileges and immunities of citizens of the several states and citizens of the United States in violation of Section 2 of Article IV and Section 1 of Amendment XIV to the Constitution of the United States.

There is a strong presumption that legislative enactments are constitutional, and a heavy burden is placed on the challenger asserting the unconstitutionality of the statute. *Gottlieb v. Milwaukee,* 33 Wis.2d 408, 147 N.W.2d 633 (1967). Moreover the courts have recognized that the state legislature has wide latitude to select the subjects of taxation and to grant exemptions. Absolute equality and complete conformity of classification is not constitutionally required. *Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245 (1937).

The question of what, if any, tax may be imposed on interstate commerce has been with us throughout our constitutional history. The United States Supreme Court

[2] WKBH views as interstate commerce the sale and exchange of stock certificates to nonresidents as well as the sale of assets and distribution of income of a corporation when all or a part of the assets are sold outside Wisconsin or the income received therefrom is distributed on an interstate basis.

has said, which we all know, that the law in this area is "cloudy and complicated, primarily because the varied nature of interstate activities makes line drawing difficult . . . ." *United Air Lines v. Mahin*, 410 U.S. 623, 629, 93 S. Ct. 1186, 35 L. Ed.2d 545 (1972). The courts have had to draw the line between the needs of a national free-flowing economy and the needs of the states for revenue, and "the result turns on the unique characteristics of the statute at issue and the particular circumstances in each case."[3]

---

[3] *Boston Stock Exchange v. State Tax Commission,* — U.S. —, 97 S. Ct. 599, 50 L. Ed.2d 514 (1977). The Court further said:

"As in *Great Atlantic & Pacific Tea Co. v. Cottrell,* 424 U.S. 366 (1976), we begin with the principle that '[t]he very purpose of the Commerce Clause was to create an area of free trade among the several states.' *McLeod v. J. E. Kilworth Co.,* 322 U.S. 327, 330 (1944). It is now established beyond dispute that 'the Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States. . . . [T]he Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States.' *Freeman v. Hewit,* 329 U.S. 249, 252 (1946). The Commerce Clause does not, however, eclipse the reserved 'power of the States to tax for the support of their own governments,' *Gibbons v. Ogden,* 9 Wheat. 1, 199 (1824), or for other purposes, cf. *United States v. Sanchez,* 340 U.S. 42, 44–45 (1950); rather, the Clause is a limit on state power. Defining that limit has been the continuing task of this Court.

"On various occasions when called upon to make the delicate adjustment between the national interest in free and open trade and the legitimate interest of the individual States in exercising their taxing powers, the Court has counseled that the result turns on the unique characteristics of the statute at issue and the particular circumstances in each case. *E.g., Freeman v. Hewit, supra,* at 252. This case-by-case approach has left 'much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation.' *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 457 (1959). Nevertheless, as observed by Mr. Justice

WKBH agrees that Wisconsin may impose a tax on income from business operations within the state or on such part of the net income as is properly apportionable to business within that state and on the income of a non-resident which is derived from property or business operations within the state.[4] But WKBH interprets sec. 71.337(1) as applying the percentage of nonresident shareholder ownership to all corporate gain on liquidation—not just to the portion of corporate income attributable to Wisconsin. WKBH then concludes that the tax is a direct imposition on interstate commerce and invalid.

This interpretation of the Wisconsin statute is incorrect. The state conceded in its brief and in oral argument that the Wisconsin tax is imposed only on the local activity of corporate liquidation prior to distribution and only to the extent of nonresident ownership. Thus the

Clark in the case just cited, '[f]rom the quagmire there emerge . . . some firm peaks of decision which remain unquestioned.' *Id.,* at 458. Among these is the fundamental principle that we find dispositive of the case now before us: no State may, consistent with the Commerce Clause, 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.' *Ibid.* See also *Halliburton Oil Well Co. v. Reily,* 373 U.S. 64 (1963); *Nippert v. Richmond,* 327 U.S. 416 (1946); *I. M. Darnell & Sons Co. v. Memphis,* 208 U.S. 113 (1908); *Guy v. Baltimore,* 10 Otto 434, 443 (1880); *Welton v. Missouri,* 1 Otto 275 (1876). The prohibition against discriminatory treatment of interstate commerce follows inexorably from the basic purpose of the Clause. Permitting the individual States to enact laws that favor local enterprises at the expense of out-of-state businesses 'would invite a multiplication of preferential trade areas destructive' of the free trade which the Clause protects. *Dean Milk Co. v. Madison,* 340 U.S. 349, 356 (1951)."

[4] "It is now well settled that interstate commerce can be required to pay its way, . . . a result commonly reached by formulae which allocate to the taxing state business derived from operations within the state." *United Air Lines v. Mahin,* 410 U.S. 623, 637, 93 S. Ct. 1186, 35 L. Ed.2d 545 (1972).

tax is on intrastate business to the extent of ownership of stock by nonresident shareholders.

WKBH argues that the tax is measured by nonresident ownership and hence discriminatory *per se*. Using a method of tax measurement that is indirectly related to interstate commerce is not automatically unconstitutional. *United Air Lines v. Mahin, supra. See also Henneford v. Silas Mason Co.*, 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814 (1937). WKBH further asserts unconstitutionality on the grounds that the tax will hinder the flow of capital by discouraging nonresident shareholders from participating in ownership of a corporation which may dissolve under the Wisconsin plan and will discourage Wisconsin residents from investing in a corporation in which nonresident shareholders may participate. The commerce clause prohibits a state tax from discriminating against interstate commerce by imposing an undue burden on interstate commerce. *Wisconsin v. J. C. Penney Co.*, 311 U. S. 435, 445, 61 S. Ct. 246, 85 L. Ed. 267 (1940) ; *Northwestern States Portland Cement Co. v. Minnesota*, 358 U. S. 450, 79 S. Ct. 357, 3 L. Ed.2d 421 (1959). However, here the argument of discrimination or undue burden is not substantiated. Any Wisconsin tax—or any state tax—may discourage or encourage investment in the state. Yet a state tax *per se* does not violate the commerce clause.[5] If this tax would in any way affect investment decisions by prospective

[5] "Our decision today does not prevent the States from structuring their tax systems to encourage the growth and development of intrastate commerce and industry. Nor do we hold that a State may not compete with other States for a share of interstate commerce; such competition lies at the heart of a free trade policy. We hold only that in the process of competition no State may discriminatorily tax the products manufactured or the business operations performed in any other State." *Boston Stock Exchange v. State Tax Commission*, — U.S. —, 97 S. Ct. 599, 50 L. Ed.2d 514 (1977).

shareholders, residents or nonresidents—and we do not think it does—the effect must be minimal. Any limited effect of this tax contrasts sharply with the broad, direct influence of the tax at issue in *Boston Stock Exchange v. State Tax Comm.*, — U.S. —, 97 S. Ct. 599, 50 L. Ed.2d 514 (1977) discussed later.

WKBH further argues there is the possibility of multiple state taxation. While possibly offensive, multiple taxation does not violate the United States Constitution, and the burden is on the taxpayer to show invidious multiple taxation (which it did not do here). *General Motors Corp. v. Washington*, 377 U. S. 436, 449, 84 S. Ct. 1564, 12 L. Ed.2d 430 (1964); *Standard Steel Co. v. Washington Revenue Dept.*, 419 U. S. 560, 563, 95 S. Ct. 706, 42 L. Ed.2d 719 (1975).

We must look at the purpose and operation of the statute in question to determine its validity. *Wisconsin v. J. C. Penney Co., supra*, at 443. The purpose of sec. 71.337 (1), enacted in 1955, was to bring the Wisconsin law into conformity with sec. 337, Int. Rev. Code, enacted in 1954. The history and purpose of sec. 71.337, as discussed in more detail in *Simanco*, was to eliminate the double taxation of taxing both the corporation and shareholder on corporate liquidation. However, the gain of a nonresident shareholder went untaxed in Wisconsin. The 1955 Wisconsin statute which was designed to avoid double taxation by imposing one tax at the shareholder level resulted in no tax—a total escape of taxation—to the extent that the shareholders were nonresidents. "It is thus apparent that the assimilation of the federal law into the Wisconsin tax structure resulted in the truncation of Wisconsin's acknowledged taxing jurisdiction." *Simanco*, p. 53.

We believe that by this statute Wisconsin has provided for a source of revenue having a relation to the

event taxed and has avoided a tax windfall. The tax does not discriminate against nonresidents in favor of residents. As we noted in *Simanco* the statute does not accord different treatment to foreign and domestic corporations but treats both alike. The impact of the tax falls on both resident and nonresident shareholder. There is no showing that the tax places a discriminatory or undue burden on interstate commerce or on nonresidents; at most, the tax can be viewed as neutralizing a tax advantage of nonresidents. The United States Supreme Court has upheld state taxation which attempted to obtain equal treatment of interstate commerce.[6] Unlike the State of New York in *Boston Stock Exchange v. State Tax Comm.*, — U.S. —, 97 S. Ct. 599, 50 L. Ed.2d 514 (1977), Wisconsin has not used a discriminatory tax to assure that residents trade only in intrastate commerce. Nor is the state attempting to build up its domestic commerce by means of an unequal or oppressive burden on the industry, business or residents of other states. Nor does this statute divert interstate commerce or divert business from the most economically efficient channels or diminish free competition in securities sales. The Wisconsin statute was not intended to—and does not—create an advantage for Wisconsin residents or Wisconsin-based business operations; nor is the statute a means of requiring business operations to be performed in the home state.

State statutes which may affect the free flow of commerce are valid if a legitimate local interest is served and if the burden imposed on commerce is not "excessive in relation to the putative local benefits." *Pike v. Bruce*

---

[6] *See Henneford v. Silas Mason Co.*, 300 U.S. 577, 57 S. Ct. 524, 81 L. Ed. 814 (1937); *General Trading Co. v. State Tax Comm.*, 322 U.S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309 (1944), quoted with approval in *Boston Stock Exchange v. State Tax Comm.*, — U.S. —, 97 S. Ct. 599, 50 L. Ed.2d 514 (1977).

*Church, Inc.,* 397 U. S. 137, 142, 90 S. Ct. 844, 25 L. Ed.2d 174 (1970); *See also Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U. S. 157, 74 S. Ct. 396, 98 L. Ed. 583 (1954). We have carefully studied the recent United States Supreme Court decision in the *Boston Stock Exchange Case,* and we believe the statute withstands the challenge based on the commerce clause.

WKBH challenges sec. 71.337(1), Stats., as denying the corporation and its shareholders the privileges and immunities of the citizens of the several states and citizens of the United States in violation of sec. 2 of art. IV and sec. 2 of the Fourteenth amendment of the federal constitution.

A corporation, though a legal entity, is not a citizen for purposes of the privileges and immunities clauses in art. IV, sec. 2 and the Fourteenth amendment, sec. 2 of the Constitution. *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 28, 20 S. Ct. 518, 44 L. Ed. 657 (1900); *Selover, Bates & Co. v. Walsh,* 226 U. S. 112, 33 S. Ct. 69, 57 L. Ed. 146 (1912). WKBH argues that the tax might be viewed as a tax upon the shareholder. Although there is a question of WKBH's standing to raise the privileges and immunities issue based solely upon the rights of the shareholders, we believe the challenge can quickly be disposed of on its merits.

States are not to exclude residents of other states or discriminate against them. The purpose of the privileges and immunities prohibition in the Constitution is to set "a norm of comity without specifying the particular subjects as to which citizens of one state coming within the jurisdiction of another are guaranteed equality of treatment." The fundamental privileges and immunities of a citizen protected by the clause include "an exemption from higher taxes or impositions than are paid by the other citizens of the state." *Austin v. New Hampshire,* 420 U. S. 656, 660, 661, 95 S. Ct. 1191, 43 L. Ed.2d 530

(1975).[7]  However, neither the Constitution nor the United States Supreme Court's interpretations thereof require absolute equality.

"It is enough that the State has secured a reasonably fair distribution of burdens, and that no intentional discrimination has been made against nonresidents.  This court has frequently held that mere inequality in the results of a state tax law is not sufficient to invalidate it." *Travelers' Ins. Co. v. Connecticut*, 185 U.S. 364, 371, 22 *S. Ct.* 673, 46 *L. Ed.* 949 (1902).

"Absolute equality in taxation can never be obtained.  That system is the best which comes the nearest to it." *Tappan v. Merchants' National Bank*, 86 U. S. (19 Wall) 490, 504, 22 L. Ed. 189 (1874).

The Court must analyze the distribution of the tax burden between resident and nonresident taxpayers.  In

---

[7] "In resolving constitutional challenges to state tax measures this Court has made it clear that in 'taxation, even more than in other fields, legislatures possess the greatest freedom in classification.' *Madden v. Kentucky*, 309 U.S. 83, 88 (1940).  See *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356 (1973).  Our review of tax classifications has generally been concomitantly narrow, therefore, to fit the broad discretion vested in the state legislatures.  When a tax measure is challenged as an undue burden on an activity granted special constitutional recognition, however, the appropriate degree of inquiry is that necessary to protect the competing constitutional value from erosion. *See id.*, at 359.

". . . The Privileges and Immunities Clause, by making noncitizenship or nonresidence an improper basis for locating a special burden, implicates not only the individual's right to nondiscriminatory treatment but also, perhaps more so, the structural balance essential to the concept of federalism.  Since nonresidents are not represented in the taxing State's legislative halls, cf. *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 532–533 (1959) (BRENNAN, J., concurring), judicial acquiescence in taxation schemes that burden them particularly would remit them to such redress as they could secure through their own States; but 'to prevent [retaliation] was one of the chief ends sought to be accomplished by the adoption of the Constitution.'" *Austin v. New Hampshire*, 420 U.S. 656, 661–662, 95 S. Ct. 1191, 43 L. Ed.2d 530 (1975).

the *Simanco* decision quoted above, this court analyzed the tax burden and found that the purpose of the law was to avoid a tax windfall arising where there are nonresident shareholders. The tax is designed to make the treatment of resident and nonresident fairer. The burden of the tax is on the corporation and thus is shared by all shareholders—residents and nonresidents alike; indeed, the effect of the tax may fall heaviest on the local resident. The United States Supreme Court has analyzed the issue of distributing the tax burden between residents and nonresidents as follows:

". . . In analyzing the apparent discrimination thus worked against nonresidents, the Court took account of the overall distribution of the tax burden between resident and nonresident stockholders. Finding that nonresidents paid no local property taxes, while residents paid those taxes at an average rate approximating or exceeding the rate imposed by the State on nonresidents' stock, the Court upheld the scheme. While more precise equality between the two classes could have been obtained, it was enough that the State has secured a reasonably fair distribution of burdens, and that no intentional discrimination has been made against non-residents. Their contribution to state and local property tax revenues, that is, was no more than the ratable share of their property within the State." *Austin v. New Hampshire*, 420 U. S. 656, 664 (1974).

Accordingly, we hold that the statute does not contravene the privileges and immunities clause.

In the area of state taxation of interstate commerce, the equal protection, the interstate commerce and the privileges and immunities provisions of the Constitution are interpreted as instruments of federalism to promote comity and to prevent the imposition of burdens by states on a national economy. Although a state action might be construed as meeting the test of one of these provisions

while violating another,[8] we believe that the reasoning of this court in *Simanco* on the equal protection argument is persuasive and is determinative of the other two constitutional issues raised in this appeal as well.

*By the Court.*—Judgment affirmed.

---

[8] In *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S. Ct. 1001, 35 L. Ed.2d 351 (1973), the Supreme Court said the following:

"Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, 'Classic examples are the taxes that discriminated against newspapers, struck down under the First Amendment (*Grosjean v. American Press Co.*, 297 U.S. 233) or that discriminated against interstate commerce (see *Michigan-Wisconsin Pipe Line Co. v. Calvert*, 347 U.S. 157) or required licenses to engage in interstate commerce.' the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation. . . ."