EVERETT E. BOLLE, Director of Legislative Services, WisconsinState Assembly
You have requested my opinion regarding "the constitutionality of the territorial distribution requirement for signatures collected in a vocational, technical and adult education district petition drive." Your reference is to that part of sec. 67.12
(12)(e)5., Stats., which provides that a vocational, technical and adult education district board need not submit a resolution to incur indebtedness by borrowing on promissory notes to a vote of the people in the district unless within a specified time there is filed with the secretary of the district board a petition requesting a referendum thereon at a special election.
The statute provides as follows:
 ". . . The district board need not submit the resolution to the electors for approval unless within 30 days after the publication or posting there is filed with the secretary of the district board a petition requesting a referendum thereon at a special election. Such petition shall be signed by electors from each county lying wholly or partially within the district. The number of electors from each county shall equal at least 2.5% of the population of the county as determined under s. 16.96
(2)(c) . . . . If a county lies in more than one district, the board of vocational, technical and adult education shall apportion the county's population as determined under s. 16.96 (2)(c) to the districts involved and the petition shall be signed by electors equal to the appropriate percentage of the apportioned population. . . ."
You point out that in the Moraine Park District the resident populations of the counties or parts of counties contained in the district are estimated, as of January 1, 1976, by the Department of Administration acting under sec. 16.96(2), Stats., as follows: Dodge County, 59,158; Fond du Lac County, 88,125; Green Lake County, 17,414; Washington County, 64,978; Winnebago County, 1,326; Waushara County, 2,437; Calumet County, 5,093; Marquette County, 99; Columbia County, 30; and Sheboygan County, 165.
In my opinion, that part of sec. 67.12 (12)(e)5., Stats., requiring that the petition for referendum be signed by electors from each *Page 351 
county equal to at least 2.5% of the population of the county, in its application to the Moraine Park District, is unconstitutional as violative of the equal protection clause, U.S. Const. amend. XIV, and Wis. Const. art. I, sec. 1, which is to be equated with the fourteenth amendment. State ex rel.Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249 (1965).
The constitutional guaranty of equal protection of the laws requires that a statute granting rights or privileges to one class of persons must grant the same rights and privileges to other classes of persons similarly situated, Christoph v.Chilton, 205 Wis. 418, 237 N.W. 134 (1931), and that all persons shall be treated alike under like circumstances and conditions, both in privileges conferred and in liabilities imposed. 16 Am.Jur. 2d, Constitutional Law sec. 488.
Application of that part of the statute requiring the petition to be signed by electors from each county equal to at least 2.5% of the population of the county to the Moraine Park District results in unequal treatment of the electors in each of the counties or parts thereof that lie within the boundaries of the district in their statutory right to sign the petition demanding that a referendum be held. The weight accorded the signature of an elector in Columbia County, for example, is 2,203 times the weight awarded the signature of an elector in Fond du Lac County. In effect, that part of the statute referred to above, in its application to the particular circumstances you mention, results in an unlawful classification. Since electors in one county of the district would be affected in the same way as electors in other counties in the district as a result of an indebtedness incurred by the district, there can be no valid basis for treating any of them differently or according the signature of an elector in one part of the district more weight than a signature of an elector in another part of the district in exercising the statutory right to petition for a referendum on the district board's resolution to incur an indebtedness.
While you mention the "one man, one vote" principle in your request, it should be noted that the United States Supreme Court has only applied the concept of "one man, one vote" to the selection of persons by popular election to perform governmental functions, In re Natural Resources Development Bond Act,47 Ill.2d 81, 264 N.E.2d 129 (1970), although at least one state has also applied it in dealing *Page 352 
with voting rights relating to an amendment of a state constitution. State v. State Canvassing Board, 78 N.M. 682,437 P.2d 143 (1968).
Nevertheless, in my opinion, the rationale of the "one man, one vote" principle, as it reflects a particular application of the equal protection clause, U.S. Const. amend. XIV, and Wis. Const. art. I, sec. 1, is also applicable to the present situation wherein the electors of a political subdivision of the state are granted the statutory right to petition to demand that a referendum be held on an issue which will affect all the electors in the district in exactly the same way.
It was in the so-called reapportionment cases, starting withBaker v. Carr, 369 U.S. 186 (1962), followed by Gray v. Sanders,372 U.S. 368 (1963), and then by Reynolds v. Sims, 377 U.S. 533
(1964), and others, that the principle of equal representation, or as it is commonly called, the "one man, one vote" principle, emerged and was developed.
In Gray, supra, the Georgia county unit system was held unconstitutional in a statewide primary election because that system resulted in a dilution of the weight of the votes of certain Georgia voters merely because of where they resided. The Court stated:
 ". . . If a State in a statewide election weighted the male vote more heavily than the female vote or the white vote more heavily than the Negro vote, none could successfully contend that that discrimination was allowable . . . . How then can one person be given twice or 10 times the voting power of another person in a statewide election merely because he lives in a rural area or because he lives in the smallest rural county? Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote — whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. . . ." Id. at 379.
In Reynolds, supra, concerning the right to give votes of residents of geographical areas of widely varying population equivalently disproportionate weight, the Court had the following to say:
 "We hold that, as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a *Page 353 
bicameral state legislature must be apportioned on a population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State. . . ." Id. at 568.
In State v. State Canvassing Board, supra, the court was faced with a provision in the New Mexico Constitution providing that no amendment affecting provisions as to elective franchise shall be valid unless ratified by vote with at least two-thirds of those voting in each county in the state voting for such amendment. In holding that the constitutional requirement was unconstitutional under the "one person, one vote" principle and equal protection clause of the fourteenth amendment because of the wide disparity in population among counties resulting in greatly disproportionate values to votes in the different counties, the court found that no rational distinction could or should be drawn between voting on representatives in the Legislature and voting on constitutional amendments.
In State ex rel. Sonneborn v. Sylvester, supra, then sec. 59.03
(2), Stats., provided that the composition of boards of supervisors in all but two counties shall consist of the chairman of each town board, a supervisor from each city ward or part thereof in the county, and a supervisor from each village or part thereof in the county. The court found that since the statute on its face did not purport to apportion the representative districts on the basis of population, and since there was a great disparity in the weight of votes in different districts caused by the statutory method of selecting county board supervisors, the statute was violative of both the equal protection clause, U.S. Const. amend. XIV, and Wis. Const. art. I, sec. 1.
The court pointed out that "It is true these cases [reapportionment cases] dealt with a right to vote preserved in a constitution and for an office created by the constitution; but the rationale of the decisions applies equally as well to a statutory right to vote." Id. at 55. The court reasoned that:
 "Although the legislative power of a county may in fact be limited by the statutes, nevertheless the constitution by sec. 22, art. IV empowers the legislature to confer on the board of supervisors such powers of a local, legislative and administrative character as it shall from time to time prescribe. Under this authorization the legislature in ch. 59 Stats., has granted a *Page 354 
substantial bundle of legislative powers to county boards and may grant additional substantial powers. Such powers are not to be confused with the powers of administrative boards and commissions to enact rules and regulations even though the latter have the effect of law. Since the composition of the legislature must conform to the principle of equal representation, it is logical that the arm or political subdivision of such legislature enacting legislation should be governed by the same principle of equal representation," id. at 56-57,
and held that the principle of equal representation applies to a county board of supervisors when that board is given legislative power and is composed of elective members.
Hence, just as the court in State v. State Canvassing Board,supra, could see no rational distinction between voting on representatives in the Legislature and voting on constitutional amendments, I can see no rational distinction between voting on representatives on a county board and voting on referenda which affect the substantial rights of the people in a vocational, technical and adult education district.
In Moore v. Ogilvie, 394 U.S. 814 (1969), an Illinois statute providing that the 25,000 or more signatures of qualified voters prescribed for nominating petitions of independent candidates for offices to be filled by voters at large must include the signatures of 200 qualified voters from each of at least 50 of the 102 counties in the state, notwithstanding that it was designed to require statewide support for launching a new political party rather than support from a few localities, was declared unconstitutional as violative of the equal protection clause of the fourteenth amendment since the fact that the Illinois population was highly concentrated in a few counties admitted of the possibility that voters in sparsely populated counties might block access to the ballot by large numbers of the state's voters who supported an independent or new party candidate.
The Court, in extending the "one man, one vote" principle to the situation presented, held that the use of nominating petitions by independents to obtain a place on the Illinois ballot was an integral part of the Illinois elective system and that all procedures used by a state as an integral part of the election process must pass muster against charges of discrimination or of abridgement of the right to vote. *Page 355 
The Court reasoned:
 "It is no answer to the argument under the Equal Protection Clause that this law was designed to require statewide support for launching a new political party rather than support from a few localities. This law applies a rigid, arbitrary formula to sparsely settled counties and populous counties alike, contrary to the constitutional theme of equality among citizens in the exercise of their political rights. The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government.
 "Under this Illinois law the electorate in 49 of the counties which contain 93.4% of the registered voters may not form a new political party and place its candidates on the ballot. Yet 25,000 of the remaining 6.6% of registered voters properly distributed among the 53 remaining counties may form a new party to elect candidates to office. This law thus discriminates against the residents of the populous counties of the State in favor of rural sections. It, therefore, lacks the equality to which the exercise of political rights is entitled under the Fourteenth Amendment." Id. at 818-819.
In my opinion, the use of a petition to require that a referendum be held on a district board's resolution to incur an indebtedness is an integral part of the statutory right to vote at such a referendum. See 63 Op. Att'y Gen. 391 (1974). Hence, just as the right to petition for the nomination of candidates, as an integral part of the elective system, is afforded protection under the equal protection clause of thefourteenth amendment, so also must be the right to petition for a referendum on a district board's resolution to incur an indebtedness.
Equal protection in its guaranty of like treatment to all similarly situated only permits classification which is reasonable and founded on material differences and substantial distinctions which bear a proper relation to matters or persons dealt with by legislation and to the purposes sought to be accomplished. Brennan v. Milwaukee, 265 Wis. 52, 60 N.W.2d 704
(1953). All of the electors in the Moraine Park District are equally affected as regards the tax effect that may result from the district incurring an indebtedness and, therefore, their right to petition for a referendum must be equally protected by the law by having their signatures accorded equal weight in petitioning for a referendum on the issue of indebtedness. *Page 356 
It is true, of course, that statutes are presumed constitutional, WKBH Television, Inc. v. Dept. of Revenue,75 Wis.2d 557, 250 N.W.2d 290 (1977), and that they will be held unconstitutional only when it so appears beyond a reasonable doubt. White House Milk Co. v. Reynolds, 12 Wis.2d 143,106 N.W.2d 441 (1960). However, in this instance, there can be no doubt that the signatures of electors in certain counties are accorded greatly disproportionate weight as compared with the signatures of electors in other counties since this is a mathematical certainty given the present composition of the Moraine Park District.
Having concluded that that portion of sec. 67.12 (12)(e)5., Stats., which requires that in order to require the district board to hold a referendum a petition must be signed by electors from each county lying wholly or partially within the school district equal to at least 2.5% of the population of that county or portion thereof lying in the district is unconstitutional in its application to the Moraine Park District, the question arises whether the invalid portion of sec. 67.12 (12)(e)5., Stats., also renders the remaining valid provisions ineffective.
Section 990.001 (11), Stats., provides as follows:
 "The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."
It has been held that where a part of a statute is declared unconstitutional, the determining factor as to whether the remainder of the statute is invalid by reason thereof is the intention of the Legislature. Madison v. Nickel, 66 Wis.2d 71,223 N.W.2d 865 (1974); State ex rel. Broughton v. Zimmerman,261 Wis. 398, 52 N.W.2d 903 (1952). An entire act is not invalidated because of the unconstitutionality of a part thereof if the part upheld constitutes independently of the invalid portion a complete law in some reasonable aspect, unless the Legislature intended it to be effective only as an entirety and would not have enacted the valid part alone. Burke v. Madison, 17 Wis.2d 623,117 N.W.2d 580 (1962), rehearing denied, 17 Wis.2d 623, 638a, 118 N.W.2d 898 (1963); *Page 357 State ex rel. Milwaukee County v. Boos, 8 Wis.2d 215,99 N.W.2d 139 (1959)
In my opinion, the unconstitutionality of that part of sec.67.12 (12)(e)5., Stats., requiring the obtainment of the signatures of electors in each county equal to at least 2.5% of the population of the county as applied to the Moraine Park District, can be eliminated from the statute with the remainder constituting, independently of the invalid portion, a complete law in some reasonable aspect without violating the intention of the Legislature.
Section 67.12 (12)(e)5., Stats., is the result of a compromise between the Assembly and Senate versions of Assembly Bill 857. Originally, Assembly Bill 857, which, as amended, became the present sec. 67.12 (12)(e)5., Stats., required that the petition for referendum be signed by 1,000 electors of the district. Senate Substitute Amendment 1 to Assembly Bill 857 required that the petition be signed by electors in the district equal to at least 10% of the persons voting for governor at the last election in the district. Hence, it seems reasonable to conclude that what was intended was that, in order to require a vocational, technical and adult education district board to submit its resolution to incur indebtedness to a referendum, there must be a showing of a certain amount of support in the district for such a referendum as evidenced by the signatures on the petition.
Therefore, in my opinion, only that part of sec. 67.12
(12)(e)5., Stats., requiring that the petition for referendum contain the signatures of electors from each county in the district equal to at least 2.5% of the population in each such county is unconstitutional as violative of the equal protection clause of U.S. Const. amend. XIV, and Wis. Const. art. I, sec. 1, and, said section, in its application to the Moraine Park District, should be read as requiring that the petition for referendum be signed by electors equal to at least 2.5% of the population of the district as a whole.
BCL:JJG *Page 358