DISCHER, Respondent, v. INDUSTRIAL COMMISSION and another, Appellants.

*May 6—June 7, 1960.*

For the appellant International Harvester Company there were briefs by *Otjen & Otjen* of Milwaukee, and oral argument by *Carl Neprud Otjen.*

For the appellant Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent there was a brief by *Goldberg, Previant & Cooper* of Milwaukee, and oral argument by *Albert J. Goldberg.*

FAIRCHILD, J.  Ch. 328, Laws of 1953, became effective July 1, 1953. It substantially restricted the right of an employee to recover workmen's compensation for occupational loss of hearing. It amended sec. 102.52 (17) and (18),

Stats., so that deafness is a scheduled permanent partial disability (irrespective of wage loss) only if it results "from accident or sudden trauma." Sec. 102.565 was amended so that when an employee is discharged or transferred from employment because of a loss of hearing due to prolonged exposure to noise in his employment, or when he ceases employment, and it is inadvisable for him to continue in it on account of such impairment, and he suffers wage loss by reason of such discharge, transfer, or cessation, compensation may be allowed. Since Mr. Discher did not suffer wage loss under the conditions specified, he cannot be allowed compensation under the law as amended.

Mr. Discher contends, however, that since he could have been allowed compensation if he filed his application on June 30, 1953, before ch. 328, Laws of 1953, became effective, and if he can show a percentage of hearing loss as of that date, he is still entitled to an allowance.

His case presents the question whether ch. 328, Laws of 1953, governs an application, made after July 1, 1953, by one who began to sustain occupational loss of hearing before that date but continued without wage loss in the employment which caused the impairment. This question was expressly left undecided in *Green Bay Drop Forge Co. v. Industrial Comm.* (1953), 265 Wis. 38, 51c, 60 N. W. (2d) 409, 61 N. W. (2d) 847.

We can find no indication that the legislature intended that the occupational loss-of-hearing provisions of ch. 328, Laws of 1953, should not govern cases like the one before us. Those provisions contain nothing which specifies any type of case to which they are not to be applied, nor as to which their effect is to be delayed. Furthermore, the enactment of the occupational loss-of-hearing provisions of ch. 328, Laws of 1953, represents a legislative decision that allowance of compensation for occupational hearing loss before it results in wage loss is not in the public interest. The In-

dustrial Commission had issued its order, later upheld in the *Green Bay Drop Forge Co. Case,* on July 28, 1952, awarding such compensation without wage loss, and it is reasonable to suppose that the construction of the law adopted by the commission in making that award prompted the legislature to enact ch. 328, under which a similar award could not be made. Under these circumstances, there is no reason to supply by implication any unexpressed intention detracting from the full effect of these provisions.

The Workmen's Compensation Act does, however, provide a general rule for the consequences of a change in the law. Sec. 102.03 (4), Stats. 1953, provides: "The right to compensation and the amount thereof shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury."

Thus the "date of the injury" must be determined. Occupational hearing loss results from a succession of events, many of which in Mr. Discher's case occurred prior to July 1, 1953. Such loss has been treated as an occupational disease, and each day of exposure to the conditions which cause industrial disease is not considered a date of injury.

There are two approaches to determining the time or date of injury in cases of occupational disease: (1) Where there is wage loss before termination of employment, the date of commencement of wage loss establishes the date of injury. *Wagner v. Industrial Comm.* (1956), 273 Wis. 553, 561, 79 N. W. (2d) 264, 80 N. W. (2d) 456; (2) for reasons explained in the *Green Bay Drop Forge Co. Case,* the legislature defined "time of injury" and "date of injury" in sec. 102.01 (2), Stats., as "the date of the accident which caused the injury, or in the case of disease, the last day of work for the last employer whose employment caused disability."

Discher seems to rely principally on approach No. 1. He sustained no wage loss, but argues that if date of wage loss is equivalent to date of injury where an occupational disease

causes disability of a type not included in the schedule, any date upon which a modicum of a scheduled disability arose from occupational exposure should be a date of injury, any one of which can be selected by the employee for the purposes of his application for compensation. If this be a sound proposition, much of the intellectual travail of the commission and this court in following approach No. 2 in *Green Bay Drop Forge Co. Case* could have been avoided for this proposition would have achieved the same result quite simply. We can find no authority, nor sound reasoning to support the conclusion that the employee is entitled to select one out of such innumerable past dates of injury, and unless he is entitled arbitrarily to select one of them the proposition that they are all dates of injury would result in confusion, the resolution of which would be unwieldy, if not impossible. Limitations would have run upon portions of his claim, and other changes in the law, such as those which altered the maximum average weekly earnings, would probably cause some portions of his claim to have legal results different from others. It was, of course, this very multiplicity of dates upon which the hearing loss was progressively accumulated which caused the Industrial Commission to consider that occupational hearing loss is an occupational disease rather than a succession of accidental injuries. See commission memorandum, pages 183 and 184, appellant's appendix, *Green Bay Drop Forge Co. v. Industrial Comm.*, *supra*.

Approach No. 2 was followed by the commission in the *Green Bay Drop Forge Co. Case.* When that matter was before the Industrial Commission, ch. 328, Laws of 1953, had not yet been enacted, but it was necessary to determine the "time of injury" for other reasons. The commission rejected the theory of successive dates of injury and turned to sec. 102.01 (2), Stats., and said in its memorandum:

"If there must be a 'last day of work' in the sense that there must be an actual severance of employment, that can easily be accomplished by an employee. He need only quit his work for a given employer for some period of time. This would constitute a seemingly fatuous gesture to accomplish by form what has no substance.

"To permit an employee to choose a 'last day of work' without actually severing his employment can do no injustice to the employer. The sooner a claim is made the more opportunity there is for protection for both employer and employee. The law, however, permits the deferring of claim until an actual 'last day of work.'

"We consider, therefore, that the 'last day of work' should be considered as the day of work before the filing of claim. We think that is logical and fair to the employer, and accomplishes legislative intent. If the employer wishes to bring a claim to conclusion for such disability as has resulted, the employer may file application and have the last day of work fixed and thus prevent the delaying of determination to a time of actual severance of the employer-employee status. (Sec. 102.17 (1) (a).) Claims being under the schedule and with no actual loss of time or wage, this holding will accomplish legislative intent without necessity for some period of cessation of work on technical grounds to satisfy a meaningless and unnecessary formality."

In the *Green Bay Drop Forge Co. Case,* the court said, at page 49, after referring to a rule for construction of a statute which is unreasonable or absurd if given its literal meaning:

"The Industrial Commission acted within this rule of statutory construction when it interpreted in the instant case the definition of *'time of injury'* contained in sec. 102.01 (2), Stats. 1951, as applied to a situation in which a disability due to occupational disease had occurred without termination of employment. It construed the words 'the last day of work for the last employer whose employment caused disability' of the statute, as applied to such a fact situation, to mean the last day of work before the filing of the applica-

tion for compensation. Such a construction is the only one compatible with the legislative history."

Thus the commission and the court in construing the definition declined to restrict the phrase "the last day of work" to the *last day of work before termination of employment,* and broadened it so as to include the *last day of work before application for compensation.* We cannot conscientiously say that "the last day of work" means any day of work before the time of application chosen by the employee. To say so would go beyond the limits of statutory construction. No claim has been made that it would be unconstitutional for the legislature to restrict an employee's right to compensation for occupational hearing loss without allowing him a period of time in which to make application under the former law.

We conclude that Discher's assertion that his date of injury was June 30, 1953, does not make it so; that because he did not apply before July 1, 1953, nor otherwise establish a date of injury before that date, he cannot be compensated for his loss of hearing unless and until he sustains a wage loss under the conditions specified in the amended law.

As appears from the statement of facts, our conclusion is consistent with the conclusion of the examiner who originally denied the application. The commission did not sustain his conclusion, but denied the application for other reasons. The circuit court considered that these latter reasons were erroneous, and ordered the commission to make a determination of the extent of disability as of June 30, 1953.

The proposition that the case is governed by the law as amended July 1, 1953, was not argued in the circuit court, but has been argued by all parties here. The attorney general, in supporting this proposition, has advised us that his argument was made with the approval of the commission.

Plaintiff Discher has, however, contended that we should not consider this proposition because it was not raised in the circuit court.

We deem it proper, however, to decide it. Under the undisputed facts, an award would be in excess of the power of the commission. Were we to pass over this issue, and affirm the circuit court, the matter would go back to the commission for further consideration. Presumably the commission, which now takes the position in this court that its examiner was correct, would deny the compensation upon remand because of its absence of power, and a new action to review, and appeal to this court would probably follow. We are told that there are a number of cases involving the identical issue. The issue is purely one of law, and no facts could be brought out before the commission which would affect it.

We have held that where the commission lacked jurisdiction to hear a matter, but entered an order upon assumption of jurisdiction, it was the duty of this court to determine that the order is a nullity although jurisdiction was never challenged until an action to review had reached this court upon appeal. *Sheehan v. Industrial Comm.* (1956), 272 Wis. 595, 604, 76 N. W. (2d) 343. We have also said: "Ordinarily this court will not consider assignments of error as to issues which have not been presented to the trial court" but "such rule is one of administration and not of power, . . ." *Culligan, Inc., v. Rheaume* (1954), 268 Wis. 298, 310, 67 N. W. (2d) 279.

Our decision makes it unnecessary to consider whether the circuit court was correct in the conclusion it reached upon the issue argued before it.

*By the Court.*—Judgment reversed; cause remanded with instructions to enter judgment confirming the order of the Industrial Commission.