STATE EX REL. BRIGGS & STRATTON CORPORATION, Kimberly-Clark Corporation, A. O. Smith Corporation, and Appleton Electric Corporation, Petitioners,

v.

Joseph NOLL, Secretary, Department of Industry, Labor & Human Relations, John R. Byrnes, Administrator, Worker's Compensation Division, DILHR, and the Department of Industry, Labor & Human Relations, Respondents.

Supreme Court

*No. 80–1098–OA. Argued January 6, 1981 —Decided March 3, 1981.*
(Also reported in 302 N.W.2d 487.)

For the petitioners there were briefs by *Elwin J. Zarwell*, *Peter W. Bunde*, *Thomas Armstrong* and *Quarles & Brady* of Milwaukee, and oral argument by *Thomas Armstrong* and *Peter W. Bunde*.

For the respondents the cause was argued by *Gordon Samuelsen*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

STEINMETZ, J.   This is an original action before this court.   In dispute are the date at which certain statutorily authorized worker's compensation benefit increases take effect and the constitutional authority of the legislature in choosing that date.   The facts in this case are not in dispute, the parties having filed a stipulation of facts with this court.

This court has jurisdiction over original actions by virtue of Art. VII, sec. 2 of the Wisconsin Constitution which states: "The supreme court has appellate jurisdiction over all courts and may hear original actions and proceedings.   The supreme court may issue all writs necessary in aid of its jurisdiction."

On December 5, 1979, Senate Bill 472 was introduced into the Wisconsin Legislature.   Sec. 4 of this bill amended sec. 102.03 (4), Stats., as follows:

"The right to compensation and the amount thereof *of the compensation* shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury except as to employes whose rate of compensation is changed as provided in ss. 102.43(7) and (8) and 102.44(1) and (2) (5)."[1]

Sec. 6 of the bill amended sec. 102.11(1), Stats., so as to increase the maximum worker's compensation benefits "for injury on or after January 1, 1980." Sec. 6 reads:

"The average weekly earnings for temporary disability, permanent total disability or death benefits for injury on or after January 1, ~~1978~~ *1980,* shall be taken at not less than $30 nor more than such wage rate as will result in a maximum compensation rate of 100% of the state's average weekly earnings as determined under s. 108.05 as of June 30, ~~1977~~ *1979.* The maximum weekly compensation rate after December 31, ~~1978~~ *1980,* is 100% of the average weekly earnings determined as of June 30, ~~1978~~ *1980.* The average weekly earnings for permanent partial disability for injuries after January 1, ~~1978~~ *1980,* shall be taken at not less than $30 nor more than ~~$97.50~~ *$105,* resulting in a weekly maximum compensation rate of ~~$65~~ *$70.* Between such limits the average weekly earnings shall be determined as follows. . . ."

Sec. 30 of the same bill provided for an effective date of the amended act as follows:

*"Effective date.* This act shall take effect on January 1, 1980, or the day after publication, whichever is later."

The bill in this form was delayed and therefore did not pass the legislature before the end of 1979. In 1980 the legislature's consideration of the bill continued. Various

---

[1] "The subsections contained in the exception in [amended] sec. 102.03(4) relate to social security benefit offsets, supplemental benefits for permanent total disability or continuous temporary total disability for injuries occurring prior to January 1, 1976 and the renewed period of temporary total disability commencing more than two years after the date of the injury." (Stipulation, paragraph 3.)

amendments were adopted, including one offered on February 12, 1980, which created sec. 29m. This section reads:

"*Applicability.* This act applies to any injuries incurred, claims made or awards made after January 1, 1980."

In this form the bill became law and was published as Chapter 278, Laws of 1979, on May 12, 1980.

On April 10, 1980, John R. Byrnes of the Department of Industry, Labor and Human Relations, sent a letter to all "Insurers and Self-Insurers" affected by the act. In this letter he told of the increases in maximum benefits authorized by the bill and informed recipients that "the benefit increases contained in the bill are retroactive to January 1, 1980." He wrote that "The retroactive feature of these increases requires you to recalculate benefit payments to individuals injured on or after January 1, 1980 . . . ."

If Mr. Byrnes' directive is enforced, approximately 10,000 claims based on injuries occurring between January 1 and May 12, 1980, inclusive, would be affected. Petitioners are among those employers who would bear the burden of recalculating and paying the retroactively increased compensation on some of those claims. They brought this suit, arguing that the increase in compensation is not retroactive to January 1 but actually applies only to claims based on injuries occurring on or after May 13. They argue in the alternative that if the increase in benefits does by its terms apply to claims based on injuries occurring between January 1 and May 12, it is unconstitutional as a retroactive law. We find that the petitioners' second argument has merit.

Two issues are raised by this case: (1) Do the statutory amendments in question require increased compensation benefits for claims based on injuries which occurred on or after January 1, 1980, and before May 13,

1980? And, (2) if such increased benefits are required, is the law which requires them unconstitutional? Our answer to both of these questions is in the affirmative.

It is undisputable that if the bill authorizing the increases in question had become law before the end of 1979, the increases would apply to all claims arising out of injuries occurring on or after January 1, 1980, and this case would never have arisen. Secs. 4, 6 and 30 of the bill are in harmony on this point. Sec. 4 states that compensation shall be determined "in accordance with the provisions of law in effect as of the date of the injury. . . ."[2] Sec. 6 raises benefits "for injury on or after January 1, 1980" and sec. 30 provides that the law shall take effect "on January 1, 1980, or the day after publication, whichever is later." If the bill had been enacted and published before January 1, then all three of these sections would refer to and would commence operation on the same date: January 1, 1980.

Benefit increase bills passed since 1972 have always been passed before the start of the new year and have authorized increases starting on January 1 of the following year. The bill at issue in this case appears to have been planned in the same pattern as its predecessors. Unlike the other benefit increase bills, however, this one was delayed and when the new year began, it still had not been enacted. On February 12, 1980, sec. 29m was added to the bill. This section provides that the act "applies to any injuries incurred, claims made or awards made after January 1, 1980." It is clear that this section was intended by the legislature as a cure for its inability to pass the bill before the end of 1979. Without the addition of sec. 29m, secs. 4 and 30 would have limited the benefit increases to claims based on injuries occurring

---

[2] The exceptions to this rule listed in the statute are clearly irrelevant to this case.

after the effective date of the statute, rather than on all injuries on or after January 1. Sec. 29m was intended to reverse these consequences and make the benefit increases payable as though the bill were enacted, like its predecessors, before January 1. If this were not the intent of sec. 29m, then that section would be superfluous. As we stated in *State ex rel. Knudsen v. Board of Education*, 43 Wis.2d 58, 65, 168 N.W.2d 295 (1969) :

"It is a cardinal rule of construction that a statute must be construed if possible so that every portion of it is given effect. *Wilmot Union High School Dist. v. Rothwell* (1965), 27 Wis.2d 228, 235, 133 N.W.2d 782. A statute should be so construed that no part of it is rendered superfluous by the construction given."

In view of the previous pattern of the legislative enactments, the late date at which this section was added, and the clear language of the section itself, we must conclude that the legislature intended the increases to be retroactive to January 1, even though the bill did not become effective until May 13.

It is true that the general rule is that an amendment to the statutes takes effect when it is enacted and will not be considered retroactive " 'unless a contrary intention is expressly stated or necessarily implied.' " *Dallmann v. Dallmann*, 159 Wis. 480, 486, 149 N.W. 137 (1915). In this case, however, such intention is inescapable and we conclude that the legislature intended the amendments to apply starting on January 1, 1980, even though the statute was not enacted until months afterward.

Having found the intent of the statute to be retroactive, we must consider its constitutionality. The general rule is that "A statute dealing with substantive rights cannot affect rights vested on its effective date." *Estate of Riley*, 6 Wis.2d 29, 37, 94 N.W.2d 233 (1959).

A legislature may not constitutionally enact a law which impairs vested rights acquired under prior law, nor may it "enact retrospective laws creating new obligations with respect to past transactions." *Haase v. Sawicki,* 20 Wis. 2d 308, 312, 121 N.W.2d 876 (1963). If the worker's compensation statutes vest rights and fix obligations as of the date of the injury, then any law which attempts to change those rights and obligations after the date of injury is unconstitutional. This court has never specifically held that the compensation laws fix rights and obligations as of the date of injury. We have held, however, that the right to compensation fully accrues at the time of injury. *Milwaukee v. Industrial Comm.,* 185 Wis. 307, 201 N.W. 251 (1924). We have also held that the amount of compensation benefits is determined according to the law as of the date of the injury. *Western Condensing Co. v. Industrial Comm.,* 234 Wis. 452, 456, 291 N.W. 339 (1940); *Discher v. Industrial Comm.,* 10 Wis.2d 637, 103 N.W.2d 519 (1960). We think it reasonable to conclude from these cases and from the statutes themselves that the right to compensation is vested and the amount of the obligation is fixed as of the date of the injury. Sec. 102.03(4), Stats., was in effect at the time of the injury. On the dates between January 1 and May 12, 1980, inclusive, when the injuries at issue occurred, the statute read:

"The right to compensation and the amount thereof shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury . . . ." Sec. 102.03(4), Stats. 1977.

When the injuries in question occurred, this statute operated immediately to vest the right to compensation and fix the amount thereof "in accordance with the provisions of law in effect as of the date of the injury." The maximum amount of compensation at that time was specified in sec. 102.11(1), Stats. 1977. These

rights having vested, subsequent non-remedial legislation may not constitutionally impair them.

*Wis. Bingo Sup. & Equip. Co. v. Bingo Control Bd.,* 88 Wis.2d 293, 306, 276 N.W.2d 716 (1979) stated:

"A retrospective statute is unconstitutional if its effect is to deprive a person of life, liberty or property without due process of law. *Schultz v. Vick,* 10 Wis.2d 171, 175, 102 N.W.2d 272 (1960)."

In *Haase v. Sawicki,* 20 Wis.2d 308, 121 N.W.2d 876 (1963) the court held, "The legislature may not constitutionally enact retrospective laws creating new obligations with respect to past transactions."

Sec. 102.03(4), Stats., set the right to compensation of the employee and the amount thereof which was the employer's obligation in accordance with the provisions of law in effect as of the date of the injury. To give the law the effect argued for by the state would retroactively affect the obligations of the employers already set by law and would be a violation of Art. I, sec. 1 of the Wisconsin Constitution. This court has held:

"It is well settled by Wisconsin case law that the various freedoms preserved by sec. 1, art. I, Wis. Const., are substantially the equivalent of the due-process and equal-protection-of-the-laws clauses of the Fourteenth amendment to the United States constitution. *Pauly v. Keebler* (1921), 175 Wis. 428, 185 N.W. 554; *Boden v. Milwaukee* (1959), 8 Wis. (2d) 318, 324, 99 N.W. (2d) 156; and *Lathrop v. Donohue* (1960), 10 Wis. (2d) 230, 235, 102 N.W. (2d) 404." *Haase, supra,* at 311 n. 2.

There was no emergency or catastrophe present in this case, such as a war, as was in the case of *Schmidt v. Wolf Contracting Co.,* 269 App. Div. 201, 55 N.Y.S.2d 162, 166–69 (1945), cited by the state. This is not to rule that the legislature may enact laws which have retroactive application under its police powers only

in emergency situations. This court did hold in *State ex rel. Bldg. Owners v. Adamany,* 64 Wis.2d 280, 288, 219 N.W.2d 274 (1974) :

"To say that the act is not unconstitutional because it outwardly serves some public purpose says but little, since the more important challenge to the law is whether the public purpose served is so important and exigent that it will justify the invocation of the state's police power in derogation of constitutionally secured rights."

Sec. 29m was placed in the bill entirely for the purpose of off-setting the late adoption by the legislature of this law and therefore does not rise to the sustainable position of the exercise of the state's police power to affect rights retroactively whether they be contractual or vested.

Having determined that the statutory provisions for increased compensation,[3] insofar as they apply to claims arising from injuries occurring between January 1 and May 12, 1980, inclusive, are unconstitutional, it only remains to decide how much, if any, of the statute may be saved.

The general rule as to whether part of a statute remains to decide how much, if any, of the statute may constitutional is that:

---

[3] "The average weekly earnings for temporary disability, permanent total disability or death benefits for injury on or after January 1, ~~1978~~ *1980,* shall be taken at not less than $30 nor more than such wage rate as will result in a maxmium compensation rate of 100% of the state's average weekly earnings as determined under s. 108.05 as of June 30, ~~1977~~ *1979.* The maximum weekly compensation rate after December 31, ~~1978~~ *1980,* is 100% of the average weekly earnings determined as of June 30, ~~1979~~ *1980.* The average weekly earnings for permanent partial disability for injuries after January 1, ~~1978~~ *1980,* shall be taken at not less than $30 nor more than ~~$97.50~~ *$105,* resulting in a weekly maximum compensation rate of ~~$65~~ *$70.* Between such limits the average weekly earnings shall be determined as follows . . . ."

"A statute may be unconstitutional in part and yet be sustained with the offending part omitted, if the paramount intent or chief purpose will not be destroyed thereby, or the legislative purpose not substantially affected or impaired, [or] if the statute is still capable of fulfilling the apparent legislative intent . . . ." 82 C.J.S. *Statutes* sec. 93(a) (1953).

■

This court has adopted this rule. In *Bence v. Milwaukee,* 84 Wis.2d 224, 233, 267 N.W.2d 25 (1978), we said:

"There is ample precedent to permit a court to sever from an ordinance or legislative enactment that portion of an act which is unconstitutional and to declare that the remaining portion is valid. As a general matter, the determination of whether an invalid portion so infects the remainder of the legislation as to require the entire law to be invalidated is a question of legislative intent. *City of Madison v. Nickel,* 66 Wis.2d 71, 223 N.W.2d 865 (1974); *State ex rel. Milwaukee County v. Boos,* 8 Wis.2d 215, 99 N.W.2d 139 (1959)."

Some cases from other jurisdictions are in conformity with the above rule but are even more specifically applicable. For example, the case of *State v. Davis,* 132 Ohio 555, 9 N.E.2d 684 (1937), dealt with a statute which gave interurban railroads a three-year exemption from certain taxes. The statute became effective on October 19, 1933, but exempted the railroads from taxation commencing on January 1, 1932. The Supreme Court of Ohio declared the statute unconstitutional insofar as it acted retroactively but declared that "the invalidity of a statute, in so far as it is retroactive in terms, may not render it invalid in its prospective operation . . . ." The court concluded that:

"The obvious intent and purpose of the legislation under consideration to exempt a certain property from taxation for a specified period of time will not be de-

feated if the statute is given effect only prospectively, though that results in only a partial accomplishment of the full object and purpose sought. Hence, the statute should be held valid and effective in so far as it is not retroactive."

The Wisconsin Worker's Compensation Act has a long history. Wisconsin employees have been provided protection by the act continuously since 1911. Benefit ceilings payable under the act have been raised many times. The bill which became law on May 13, 1980, is one of several such raises passed in the last decade. It is obvious from the history of that bill which has already been discussed that it was the intent of the legislature to raise the maximum benefits and to raise them commencing on January 1, 1980. Because of a delay in passing the bill, increases could be made payable commencing on January 1 only by making the bill retroactive. This was accomplished by the addition of sec. 29m. It is apparent to this court that the determination that this section is unconstitutional does not "so infect[s] the remainder of the legislation as to require the entire law to be invalidated." The intent of the legislature to increase the benefits was the paramount intent or chief purpose of the bill. This intent is still capable of fulfillment even without the unconstitutional provision for the retroactive payment. Hence, we find that although sec. 29m of the bill is unconstitutional and void, the remainder of the bill is valid, though it "results in only a partial accomplishment of the full object and purpose sought." We conclude that with sec. 29m voided the increase in maximum benefits authorized by sec. 102.11(1), Stats., is applicable only to claims arising out of injuries occurring on or after the effective date of the statute, May 13, 1980.

*By the Court.*—It is adjudged and declared that sec. 29m, ch. 278, Laws of 1979, is unconstitutional and void

and that the increase in maximum benefits authorized by sec. 6 of that chapter shall apply to claims arising out of injuries occurring on or after May 13, 1980, and not to claims arising out of injuries occurring before that date.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The statutory amendments in question apply to injuries incurred between January 1, 1980 and May 12, 1980. Thus they have some retroactive effect.[1] I reject the majority's conclusion that the statutory amendments violate Art. I, sec. 1, Wis. Const.,[2] and the petitioners' (employ-

---

[1] It is unclear from the majority opinion whether it interprets the statute to provide increased payments to persons injured on and after January 1, 1980, for the period January 1 through May 12, 1980, or for the period after May 13, 1980. I conclude that the petitioners are liable for increased payments commencing with payments made on and after May 13, 1980, to persons injured after January 1, 1980.

[2] Art. I, sec. 1, Wis. Const. provides: "All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

The majority correctly states that this court has recognized that sec. 1, Art. I, Wis. Const., encompasses the concepts of due-process and equal protection. The majority opinion should not be construed, however, to mean that this court is departing from its long-held view that this state may afford its citizens greater constitutional protections under the Wisconsin Constitution than are required of the state by the federal constitution. This court asserted its powers to construe our state constitution as early as 1855, saying: "The people then made this constitution, and adopted it as their primary law. The people of other states made for themselves respectively, constitutions which are construed by their own appropriate functionaries. Let them construe theirs—let us construe, and stand by ours." *The Attorney General ex rel. Bashford v. Barstow*, 4 Wis. 567, 785, \*758 (1855). For a discussion of the protections afforded by the state constitution, *see, e.g., Carpenter v. Dane County*, 9 Wis. 249 (1859); *Hoyer v. State*, 180 Wis. 407

ers') contention that the statutory amendments violate the fourteenth amendment of the federal constitution or the contract clause of the federal constitution.[3] Therefore I dissent.

The retroactive effect of these statutory amendments is to alter duties incident to injuries occurring before the amendments were enacted. That the constitutionality of the statutes is problematic is apparent almost from this description alone. The majority resolves the constitutional question by describing the effect of the amendments. The majority concludes that the petitioners' obligations are fixed by the worker's compensation act in effect on the date of injury, that these fixed obligations are "vested rights,"[4] and that the legisla-

---

(1923); *State v. Taylor,* 60 Wis.2d 506, 522, 210 N.W.2d 873 (1973); *State v. Doe,* 78 Wis.2d 161, 171, 254 N.W.2d 210 (1977); *Terry v. Percy,* 81 Wis.2d 693, 697–700, 767 N.W.2d 380, 382–83 (1978) (Abrahamson, J. concurring); *Laasch v. State,* 84 Wis.2d 587, 597–599, 267 N.W.2d 278 (1978) (Abrahamson, J. concurring); *State v. Starke,* 81 Wis.2d 399, 420–23, 260 N.W.2d 739 (1978) (Abrahamson, J. concurring); *Zelenka v. State,* 83 Wis.2d 601, 617, 266 N.W.2d 279 (1978). *See generally,* Hachey, *Jacksonian Democracy and the Wisconsin Constitution,* 62 Marq. L. Rev. 485 (1979).

[3] Art. I, sec. 10, U.S. Const.: "No state shall . . . pass any . . . law impairing the obligation of contracts."

I conclude, as did counsel for petitioners on oral argument, that the analysis used to determine impairment of contract obligations and the analysis used to determine deprivation of due process under the "vested rights" theory are the same in this case.

For a discussion of the standard of review of retroactive legislation on contract clause or due process grounds, see *e.g.,* Tribe, *American Constitutional Law* ch. 9 (1978), ch. 9 (1979 Supp.); Note, *Constitutionality of Retroactive Land Statutes—Indiana's Model Dormant Mineral Act,* 12 Ind. L. Rev. 455 (1979); Note, *Revival of the Contract Clause: Allied Structural Steel Co. v. Spannaus and United States Trust Co. v. New Jersey,* 65 Va. L. Rev. 377 (1979).

[4] Prior to this case the court had not decided that the employer's statutory obligations are vested rights. In *Kleiner v. Milwaukee,*

ture "may not constitutionally impair them." *See,* p. 657.

Labeling the petitioners' obligations as "vested rights", as the majority does, is conclusory and simplistic. *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077, 1081 (1st Cir. 1977) ; *State ex rel. Bldg. Owners v. Adamany,* 64 Wis.2d 280, 294, 219 N.W.2d 2'74 (1974). The label merely reflects the conclusion that the right is deserving of protection against the statute in issue. The label does not explain when a right should be viewed as so far perfected as to be deserving of such protection.

I begin by noting that the majority's treatment of the issue of the constitutionality of the statute does not conform to the principles of law governing this question. This court has repeatedly said that a statute is presumed to be constitutional and that the party challenging the constitutionality of a statute bears a heavy burden. In some cases we have said that to overcome this presumption of constitutionality the challenger "must prove the law to be unconstitutional beyond a reasonable doubt." *State ex rel. Bldg. Owners v. Adamany,* 64 Wis.2d 280, 286, 219 N.W.2d 274 (1974). *See also State v. Hart,* 89 Wis.2d 58, 64, 277 N.W.2d 843 (1978) ; *WKBH Television Inc. v. Dept. of Revenue,* 75 Wis.2d 557, 566, 250 N.W.2d 290 (1977). The United States Supreme Court, taking a similar view, recently described the presumption of constitutionality applicable to statutes and the challenger's burden as follows: It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary

270 Wis. 152, 156, 70 N.W.2d 662 (1955), this court refused to determine whether an increase of benefits after injury contravenes the contract clause or due process. In *Kleiner* the rights and liabilities of the parties were fixed by an award.

and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976).

Although our cases do not define the nature of the presumption or of the burden, neither the presumption nor the burden falls by the wayside when the statute is challenged on grounds of retroactivity. *State ex rel. Bldg. Owners v. Adamany*, 64 Wis.2d 280, 286, 219 N.W.2d 274 (1974). Not every statute is unconstitutional merely because its effect "is to impose a new duty or new liability based on prior acts." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 (1976).[5] I recognize that although courts have frequently said that the legislature may readjust economic rights and burdens even if otherwise settled rights, obligations, interests or expectations are disturbed, retrospective laws are viewed with suspicion. As a result, justification suitable for prospective legislation may not suffice as justification for retrospective legislation. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976). This suspicion of retroactive enactments is grounded in several considerations including the notion that "laws that unsettle settled rights can be harsh, and they deserve a special scrutiny." *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077, 1080 (1st Cir. 1977).

The cases pose two principal factors as determinative of the validity of a retroactive statute: (1) the nature and strength of the public interest served by the statute and (2) the unfairness created by its retroactivity. The extent of the party's reasonable reliance on the law existing at the time of the conduct whose legal consequences would be altered is a useful gauge of the element of unfairness. *State ex rel. Bldg. Owners v. Adamany*, 64 Wis.2d 280, 288, 219 N.W.2d 274 (1974);

---

[5] In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 19–20 (1976), the United States Supreme Court held that the "Due Process clause poses no bar to requiring an operator to provide compensation for a former employee's death or disability due to pneumoconiosis arising out of employment in its mines, even if

*Adams Nursing Home of Williamstown, Inc. v. Mathews,*
548 F.2d 1077, 1080 (1st Cir. 1977); Hochman, *The
Supreme Court and the Constitutionality of Retroactive
Legislation,* 73 Harv. L. Rev. 692, 697, 727 (1960);
Slawson, *Constitutional and Legislative Considerations
in Retroactive Lawmaking,* 48 Calif. L. Rev. 216 (1960).
Consequently, in deciding the validity of a retroactive
enactment "courts have generally compared the public
interest in the retroactive rule with the private interests
that are overturned by it." *Adams Nursing Home v.
Williamstown, Inc. v. Mathews,* 548 F.2d 1077, 1080
(1st Cir. 1977) quoted with approval in *Daughters of
Miriam Center for the Aged v. Mathews,* 590 F2d 1250,
1260 (3d Cir. 1978). The courts balance these com-
peting considerations; the greater the alteration of the
petitioners' rights, interests and expectations, "the weak-
er is the case for the constitutionality of the statute."
Hochman, *The Supreme Court and the Constitutionality
of Retroactive Legislation,* 73 Harv. L. Rev. 692, 712
(1960).

The majority opinion fails to compare the public and
the private interests involved here. I consider this com-
parison to be essential to the disposition of the issue
before us.[6]

former employee terminated his employment in industry before the
Act was passed." The decision rests on the Court's conclusion that
the imposition of liability is justified as a rational measure to
spread the costs of employees' disabilities to those who have prof-
its from the fruits of their labor.

[6] The petitioners' brief (p. 32) asserts that "An examination of
the decisions of courts in other states discloses that, with virtual
unanimity, they have held that legislation which attempts to retro-
actively increase worker's compensation benefits is unconstitution-
al, either as an impairment of vested rights or an interference
with the obligation of contract." The petitioners refer us to the
following cases: *Tennessee Coal & Iron Div., U. S. Steel Corp. v.
Hubbert,* 110 So.2d 260, 262–265 (Ala. 1959), and cases cited there-
in; *Peterson v. Federal Mining & Smelting Co.,* 170 P.2d 611, 612
(Idaho, 1946); *Harris v. National Trucking Service,* 321 So.2d 690,
693–695 (Ala. App. 1975); *Reggep v. Lunder Shoe Products Co.,*

This court will presume a constitutional public purpose "if there is any reasonable basis upon which the

241 A.2d 802, 804 (Me. 1968); *State v. Healy*, 410 A.2d 432, 435 (R.I. 1980); *Cooper v. Wicomico County Dept. of Public Works*, 278 Md. 596, 366 A.2d 55, 57, 58 (1976); *McAllister v. Bd. of Ed., Kearny*, 79 N.J. Super. 249, 191 A.2d 212, 220 (1963); *United Iron Works v. Smethers*, 14 P.2d 380 (Okla. 1932); *Noffsker v. K. Barnett & Sons*, 72 N.M. 471, 384 P.2d 1022 (1963); *Lyon v. Wilson*, 443 P.2d 314, 319 (Kan. 1968); *Maxwell v. State Compensation Director*, 144 S.E.2d 493, 496–498 (Ct. App. W. Va. 1965). These cases do not persuade me that the statute in the case at bar is unconstitutional. In several cases, the court concluded, without analysis, that a vested right or a contract right was unconstitutionally impaired. In some cases, the court's conclusion or discussion of constitutionality was merely dicta. In the few cases in which the court balanced the legislative purpose and the degree of impairment to conclude that the law was unconstitutional, the facts were significantly different from those in the case at bar. In *Cooper v. Wicomico County Dept. of Public Works*, *supra*, which involved a law increasing compensation awards, the court did not rule on the issue of constitutionality and remanded the matter to the trial court for testimony, saying "We think the lower court was correct [*i.e.*, the law would be unconstitutional] if the operational effect of ch. 832 requires an employer or insurer to pay more than it was required to pay under the law in effect at the time of injury. It is generally held that the basis of a compensation award is contractual and that the amount payable thereunder by an employer or insurer cannot be increased retrospectively . . . . The facts of a case are, however, all important. The record before us does not contain facts which afford us the opportunity to determine—and the trial court did not go into the matter—whether any substantial vested right of either appellee was divested or any obligation either had was substantially increased." On remand, the statute in issue was declared unconstitutional, *Cooper v. Wicomico County Dept. of Public Works*, 284 Md. 576, 398 A.2d 1237 (1979).

DILHR relies on the following cases which upheld retroactive legislation: *Schmidt v. Wolf Contracting Co.*, 269 App. Div. 201, 55 N.Y.S.2d 162 (1945), aff'd 295 N.Y. 748, 65 N.E.2d 568 (1946); *Price v. All American Engineering Company*, 320 A.2d 336 (Del. 1974); *Lahti v. Fosterling*, 357 Mich. 578, 99 N.W.2d 490 (1959); *Clark v. Chrysler Corp.*, 377 Mich. 140, 139 N.W.2d 714 (1966).

In *American Stevedores, Inc. v. Salzano*, 538 F.2d 933, 937, (2d Cir. 1976), the federal court of appeals said that "[t]he constitu-

legislation can be explained by facts within the knowledge of this court." *State ex rel. Bldg. Owners v. Adamany*, 64 Wis.2d 280, 301, 219 N.W.2d 274 (1974). The facts may be skeletal in nature and may be apparent from the face of the legislation or from the legislative history. The legislative purpose of the law in issue can be explained by facts within the knowledge of this court. The purpose of the workmen's compensation laws is, as we have previously said, "to provide financial and medical benefits to the victim of 'work-connected' injuries and their families—regardless of fault, and to allocate the financial burden to the most appropriate source, the employer, and ultimately the consumer and the public." *Brenne v. ILHR Dept.*, 38 Wis.2d 84, 91–92, 156 N.W.2d 497 (1968). *See also Anderson v. Miller Scrap Iron Co.*, 169 Wis. 106, 110, 170 N.W. 275, 171 N.W. 935 (1919). It is apparent that the statutory amendments periodically increasing the benefit is tied to inflationary economic conditions. As DILHR's brief points out, the legislature has in each session since 1972 increased the benefits to persons injured "to afford full and adequate compensation to injured workers . . . to meet changing conditions." (DILHR brief, p. 12) I conclude that the public purpose to be served by the statute is to protect disabled workers in an inflationary economy.

Petitioners do not deny that a valid public purpose is served by the retroactive features of the statute. Instead they direct their arguments at the sufficiency of the action taken and then at the sufficiency of the public purpose.

Petitioners first contend that if the discernible public purpose is valid, the legislature did not go far enough. The petitioners argue that there is nothing to distinguish persons injured in December 1979 from persons injured in January 1980. This type of argument has not been

tionality of retroactive provisions in workmen's compensation type statutes is well established."

accepted by the courts. It is for the legislature to choose the time for increasing the benefit, and the courts should not assess the wisdom of the legislature choosing January 1, 1980, May 13, 1980, or any other time. Whether the increases are adequate because of their timing or their amount is not a question of constitutional dimension. *Cf. Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 19 (1976). It is sufficient, as a constitutional matter, that the amendments approach the problem of inflation rationally.

Secondly, the petitioners complain that the discernible public purpose does not amount to "exigent circumstances of vital public interest which would necessitate the exercise of the state's police power and provide a sufficient basis on which to interfere with the vested rights of petitioners." (Petitioner's Reply Brief, p. 12.) The petitioners intimate that only exigent circumstances can justify this retroactive law. The majority, using similar reasoning, distinguishes *Schmidt v. Wolf Contracting Co.*, 269 App. Div. 201, 55 N.Y.S.2d 162, 166–169 (1945), by saying there is no emergency or catastrophe present in this case such as a war. It is clear from the authorities that it is not "only an emergency of great magnitude [which] can constitutionally justify" a retroactive state law. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 249, n. 24 (1978).[7]

The resolution of the issue of constitutionality requires an analysis of the harms caused by retroactivity and a determination of whether the discernible public purpose justifies the effects. The constitutionality of a retroactive law is thus a function of both the purpose the

---

[7] In *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244–245 (1978), the Court struck down, under the contract clause, a Minnesota statute which undertook for the first time to subject existing pension plans to state regulation, which imposed severe and significant unexpected liability on companies in disabling amounts and which failed to state the economic conditions requiring such legislation. The dissent viewed the issue as one of due process.

statute is intended to serve and the extent to which the statute abrogates an asserted preenactment right, interest or expectation. The severity of the effect on the private interest of the retroactive legislation "measures the height of the hurdle the state legislation must clear." *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244–245 (1978).

Having reviewed the purpose the statute in issue is intended to serve, I turn to an analysis of the effect of the law on the petitioners. I must examine the petitioners' rights, interests and expectations affected by the law in issue, the petitioners' reliance on the prior law,[8] and the severity of the injury to the petitioners caused by the retroactivity of the law .

The petitioners concede that their expectations include the knowledge that the legislature may increase their obligations under worker's compensation. Petitioners and DILHR agree that increasing the benefit every two years for persons injured after January 1 of each even-numbered year became a legislative practice in this state in the 1970's. *See* ch. 150, Laws of 1973; ch. 147, Laws of 1975; and ch. 195, Laws of 1977.[9] Notwithstanding this practice petitioners assert surprise that legislation adopted after January 1, 1980, was made applicable to injuries occurring on and after January 1, 1980. The petitioners were not too surprised, however, since DILHR advised employers prior to the adoption of the law that the new law would be applicable to employees injured on and after January 1, 1980. The gravamen of the petitioners' argument is that

[8] In a challenge to retroactivity, a key question is how the conduct of the petitioners or others similarly situated would have differed if the law in issue had applied from the start. The petitioners do not address this issue.

[9] Sec. 102.14(2), Stats. 1979–1980, requires the council on worker's compensation to submit its recommendations for revisions of ch. 102, Worker's Compensation, to each regular session of the legislature. Each of these laws, as well as the 1979 law, reflects an amendment proposed by the council.

their expectation was that the law increasing benefits would be applicable only to injuries occurring after the law was published. Sec. 990.05, Stats., provides: "Every law or act which does not expressly prescribe the time when it takes effect shall take effect on the day after its publication." I view the law's affect on the petitioners' expectations as minor, particularly in light of the limited effect of the retroactive nature of the law. The statute limits increased benefits to those persons who are injured on and after January 1, 1980. Furthermore, the increases, as I interpret the law, do not begin on January 1, but on May 13, 1980.

The petitioners' rights and interests in their obligations have been affected. But the severity of the injury to the petitioners' rights and interests resulting from retroactive application of the statute has not been described by the parties. The parties' Statement of Stipulated Facts alleges that it is impossible to determine the total cost to the petitioners of retroactive application of the statute.[10] Even if the total cost could not be determined, some estimates could have been made.[11] Yet petitioners made no effort to set forth estimates of their increased expenses on the basis of their prior experience under the worker's compensation act or on the basis of factors known as of the date of the briefs or oral argument. Petitioners' brief indicates that per-

[10] The stipulation states: "19. It is impossible to determine the total cost, including administrative costs, to Petitioners, other self-insured employers and insurance carriers of complying with the amended Act, as interpreted by respondents because: (1) the total cost of the retroactive increased benefits has not yet been calculated by Petitioners and each other individual self-insured employer and insurance carrier; (2) in many cases, the payment of retroactive increased benefits will extend indefinitely into the future and (3) not all claims for which retroactive increased benefits would be due have as yet been made by qualified employees."

[11] Estimates can be made. Fiscal Notes to the Worker's compensation laws estimate the costs of the bill to the state in its capacity as an employer. *See* Bill Drafting files maintained by the Legislative Reference Bureau, State Capitol, Madison, Wisconsin.

haps 10,000 employees in the state—not 10,000 employees of the petitioners—may be affected if the law is applicable to persons injured between January 1 and May 12, 1980. Petitioners do not tell us how many employers employ these 10,000 employees. DILHR noted that more than 100,000 employers are potentially affected by the law. Thus, barring a catastrophic accident injuring many employees of a single employer, it would appear, absent a showing to the contrary, that the increased cost to any single employer in the state as a result of the retroactivity of the law might be very small indeed. And I note that the petitioners never assert that they—or employers similarly situated—will suffer severe, adverse or disproportionate economic costs or consequences as a result of the retroactive law. Petitioners rest their case on their assertion that their vested rights have been impaired; they make no analysis of the impairment. It is speculative on this record to surmise the effect of the retroactive application of the law on the petitioners. *Cf. Gange Lumber Co. v. Rowley*, 326 U.S. 295, 303–305 (1945).

Because petitioners have failed to show that their rights, interests and expectations were significantly altered or affected by the retroactive legislation, the "height of the hurdle" the state legislation must clear is low. In the instant case, the state need not show exceptional and extraordinary exigent circumstances to justify the retroactive legislation in issue. Considering the level of impairment of the petitioners' asserted pre-enactment rights, interests and expectations, I conclude that the legislature has demonstrated a valid legislative purpose for retroactivity. As we noted previously, the legislature has over the years increased the maximum benefits to allocate to the employer the increased cost of providing compensation to the employee suffering a work-connected disability. The burden on the employers caused by this retroactive statute is part of the risk-sharing

concept of worker's compensation and implements the legislative judgment that benefits must periodically be increased in an inflationary era. The worker's compensation law shifts the risk of employment injuries from the employee to the employer who can spread the risk by insurance and who can pass the costs on to the consumer and the public.

I would find that the imposition of what appears on this record to be limited increased liability on employers for workers injured between January 1 and May 12 is justified as a reasonable measure to aid disabled employees and to spread the costs of employees' disabilities to those who profited from the fruits of their labor and who can spread the costs to the purchasers of the products and services.

In sum, the petitioners have not overcome the presumption favoring the legislative judgment as to the necessity and reasonableness of their enactments and have not carried their burden of proving the law's unconstitutionality beyond a reasonable doubt. Considering that the legislature is attempting to increase benefits and liabilities to help the employee keep up with inflation; considering that the legislature has a history of increasing awards effective to injuries occurring after January 1 of a particular year; considering that the statute's retroactive effect is limited to injuries occurring during a brief period (4½ months) ; considering that the increased payments are to be made for the period after May 13, 1980, and not for the period January 1 through May 12; and considering that the petitioners have shown no significant alteration in their rights, interests and expectations, resulting from the legislation, I conclude that neither the federal nor the state constitution invalidates the legislation in issue. I therefore dissent.

I am authorized to state that Justice Nathan S. Heffernan joins in this dissent.