DONALD E. PERCY, Secretary Department of Health Social Services
You request an opinion as to whether the state will have continuing legal obligations on debts incurred by medical students while sec. 39.377, Stats., providing for "loan forgiveness," was in effect, if the statute is now amended or repealed.
Under the provisions of sec. 39.377, Stats., as created by ch. 34, Laws of 1979, physicians, after completion of their medical school education in Wisconsin, may become eligible for up to $10,000. Section 39.377, Stats., provides[1]:
 (1) There is established, to be administered by the board, a [forgiveness]* grant component of the Wisconsin health education loan program under s. 39.325, for students enrolled in the university *Page 204 
of Wisconsin medical school or in the medical college of Wisconsin.
 (2) [Up]* A grant of up to $5,000 [in loan principal and accrued interest commitment incurred by a medical student under]* may be awarded annually for 4 years to a physician who participated in the loan program [in]* under s. 39.325 [may be for given annually for 4 years]*, subject to the requirements in pars. (a), (b) and (c):
 (a) [Twelve]* A grant equal to twelve and one-half percent of principal and accrued interest commitment, not to exceed $2,500, may be [forgiven]* awarded annually for 4 years if the physician establishes a primary care medical practice in this state.
 (b) [Twelve]* A grant equal to twelve and one-half percent of principal and accrued interest commitment, not to exceed $2,500, may be [forgiven]* awarded annually for 4 years if the physician practices any specialty in a geographical area of this state designated by the department of health and social services as underserved.
 (c) The [amount forgiven for]* total grant awarded to any individual may not exceed the total amount borrowed by that individual.
 (3) A definition of primary care medical specialties and a methodology to designate underserved areas of this state shall be developed by the department of health and social services in consultation with the medical education review committee, the health policy council, the university of Wisconsin office of rural health and local health systems agencies. The department of health and social services shall promulgate rules for the implementation and operation of the program under this section and shall report to the assembly health and social services committee, the senate human resources committee, the joint committee for review of administrative rules and the joint committee on finance regarding the definitions of primary care specialists, designated underserved areas of this state and proposals for the periodic review of the rules and guidelines for the continued operation of the [loan forgiveness]* grant
program under this section.
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.] *Page 205 
A recommendation has been made by an advisory committee appointed by the Department that this program be significantly altered. You state that new legislation is being considered which would: (1) limit the geographical areas in which a physician could locate and still be eligible, (2) limit the type of practices which would qualify, (3) increase the financial incentives and (4) expand the class of qualifying loans to all institutional loans, dropping Higher Education Assistance Loans (HEAL) participation as an eligibility requirement.
As a result of such an amendment to sec. 39.377, Stats., the regions and fields of practice which originally would have qualified a student for future loan forgiveness under the program may no longer qualify. Under such circumstances, it is difficult to predict all the legal arguments which might be advanced to justify a formerly qualifying student's claim. However, I assume that a claim might be based on due process or other constitutional grounds which would assert that the former statute created a vested right which could not be repealed retroactively.
Initially, it is important to remember that all statutes enacted by the Legislature enjoy a presumption of constitutionality. State ex rel. Bldg. Owners v. Adamany,64 Wis.2d 280, 286, 219 N.W.2d 274 (1974), and St. ex rel. Ft. How.Paper v. Lake Dist. Bd., 82 Wis.2d 491, 505, 263 N.W.2d 178, 185
(1978). The amendment of sec. 39.377, Stats., must be presumed to be a constitutional alteration of the eligibility requirements unless an interested party can meet the requisite burden of proving otherwise. In Usery v. Turner Elkhorn Mining Co.,428 U.S. 1, 15 (1976), the Supreme Court stated:
 It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.
The law applicable to the circumstances you describe is stated in 16A Am. Jur. 2d Constitutional Law § 691 (1979), as follows:
 Although it may be taken as a general rule that rights conferred by statute are not contractual in their nature so as to prevent their alteration or abrogation . . . it is a matter of established law that a legislative enactment in the ordinary form of a *Page 206 
statute may contain provisions which, when accepted as the basis of action by individuals or corporations, become contracts between them and the state within the protection of the clause of the Federal Constitution forbidding impairment of contract obligations; rights may accrue under a statute, or even be conferred by it, of such character as to be regarded as contractual and such rights cannot be defeated by subsequent legislation . . . . The presumption is that a state law is not intended to create private contractual rights but merely declares a policy to be pursued until the legislature shall ordain otherwise, and he who asserts the creation of a contract with the state has the burden of overcoming the presumption.
The applicable legal principles are stated in slightly differing terms in 16A Am. Jur. 2d Constitutional Law § 692, as follows:
 The general principle is established in American jurisprudence that a legislative grant under which rights have vested amounts to a contract and that a subsequent statute attempting to impair or annul such grant is unconstitutional because it is a law impairing the obligation of contracts. Thus, if a state makes a grant absolute in terms and without any reservation of a right to alter, modify, or repeal it, this constitutes an executed contract, and the state is forbidden to pass laws impairing the obligation arising therefrom. The state cannot afterward recall the grant even though it was originally executed without consideration . . . .
 On the other hand, it is also the rule that the legislature has the power to take away by statute that which has been given by statute except when to do so would obviously amount to the impairment of a vested right. The recall of such a privilege is not an impairment of the obligation of contracts.
As the above quotes from 16A Am. Jur. 2d Constitutional Law
§§ 691, 692, point out, there is a presumption that statutes merely declare policy which may be altered by the Legislature at any time. However, there are instances in which an individual can act in reliance on a statute which creates contract rights enforceable against a state. The burden is on the citizen to prove the existence of a contract right. The analysis to determine whether contract rights are impaired appears to be indistinguishable from the analysis used to determine *Page 207 
whether there has been deprivation of due process because of an impairment of vested rights. See State ex rel. Briggs Strattonv. Noll, 100 Wis.2d 650, 662 n. 3, 302 N.W.2d 487 (1981). Presumably, if rights may be considered to have "vested" under the statute, or if a contract arising under the statute may be viewed as fully executed, such rights or contract may not be impaired.
In State ex rel. Bartlet v. Thompson, 246 Wis. 11,16 N.W.2d 420 (1944), the court examined the constitutionality of an amendment which altered retirement and death benefits under state law. The deceased in that case had elected into the system on January 1, 1938, and made contributions until his death on December 20, 1942. On June 28, 1941, the Legislature had amended the death benefit provisions of state law by inserting a $1,000 limit on the city's contribution. The effect of the amendment was to reduce the decedent's death benefits from $2,722.58 to $2,012.58. In sustaining the constitutionality of the amendment the court stated:
 [U]nder the provisions of sec. 5(4) the right to receive a contribution from the city does not arise until the proper proofs of death of a member are filed. At the time of the amendment in 1941, the deceased employee had no vested right to the contribution provided for by sub. (4). While sec. 10 . . . makes the payment of the funds therein described an obligation of the city, that obligation does not vest until the death of the member, and for that reason neither he nor his estate has a vested interest in the benefit to be paid by the city pursuant to the provisions of sub. (4). The deceased having no vested interest in the contribution of the city and the relation between the parties not being contractual, it was within the competency of the legislature to prescribe a different amount than that prescribed in ch. 396, Laws of 1937, at any time before the death of a member.
Thompson, 246 Wis. at 15.
A comprehensive analysis of several approaches to determining the constitutionality of statutes which are alleged to have some retroactive effect is set forth in Justice Abrahamson's dissent in Noll, 100 Wis.2d at 661-62. As the dissenting opinion points out, it is conclusory and simplistic to say that a statute which impairs "vested rights" is unconstitutional. Noll,100 Wis.2d at 663. The problem is to determine which expectations, interests and rights created by a *Page 208 
statute are deserving of constitutional protection. Justice Abrahamson goes on to point out:
 The cases pose two principal factors as determinative of the validity of a retroactive statute: (1) the nature and strength of the public interest served by the statute and (2) the unfairness created by its retroactivity. The extent of the party's reasonable reliance on the law existing at the time of the conduct whose legal consequences would be altered is a useful gauge of the element of unfairness.
Noll, 100 Wis.2d at 664.
It is my opinion that a student cannot be said to have executed a contract or effectively relied on the statute so as to cause a "vesting of rights" until he has established a practice which responds to the then current statutory requirements. Under the facts you have given, it does not appear that students have acted any differently than they would have acted had no such program existed. Borrowing money to finance a medical education is based on considerations apart from the statutory incentives of sec. 39.377. Stats. The loan made with the private financial institution has its own terms and is a complete contract standing alone. The incentives in the statute were enacted by the Legislature not to encourage students to borrow money, but to encourage those who do to pursue their medical practice in particular areas and in particular fields. The Legislature determines which areas and fields the state has an interest in having doctors provide more health care services. The Legislature is free to alter the incentives and the conditions until the student effectively acts in reliance on and in compliance with the statute.
If, on the other hand, a graduate had begun a practice in a particular community he may have done so because of the financial incentives of sec. 39.377 Stats. In my opinion, this student would have a much stronger argument for unfairness, should the statute then be repealed or altered. The retroactive effect of such action at this point might make it unconstitutional. According to the facts you have given, however, reliance of this type has not yet occurred.
Students who have borrowed money may argue they have relied on sec. 39.377, Stats., at the time they incurred the debt. The program, however, would not be repealed under the proposed legislation. Only the guidelines for eligibility would be altered. In fact, as *Page 209 
you state, the new legislation would substantially increase the financial incentives for location and practice in what the state determines are areas of present need. Therefore, the "alteration of rights" from the student's perspective is not significant considering the increased economic incentives which may be made available as opposed to the decreased freedom of choice of location and type of practice. Furthermore, I doubt that a court would find this was the actual motivation for taking out a low interest HEAL program loan, or, that such initial motivation constitutes the kind of reliance which would create a contractual relationship. Such reliance on the program at the time of borrowing would be totally premature and unreasonable, because the student should know that the program might change or terminate altogether in the future.
I must emphasize that this opinion is based in part upon the fact that I am advised that sec. 39.377, Stats., has never been implemented and not a single student has as yet come forward to inquire about or seek benefits under the program. Based on the foregoing, therefore, it is my opinion that if sec. 39.377, Stats., is repealed or amended to change the eligibility guidelines, the state would not be liable under former guidelines to students who have not yet effectively acted in reliance on the statute in setting up their qualifying health care practice in a particular area.
BCL:JCM:cm
[1] Section 39.377, Stats., was recently amended by ch. 20, Laws of 1981. Both the original and present versions are reprinted herein. In my opinion the alteration does not materially affect the reasoning of this opinion.